(107 So. 593)

No. 27683.

T. HOFMAN–OLSEN, Inc., v. NORTHERN LUMBER MFG. CO., Inc.,

In re NORTHERN LUMBER MFG. CO., Inc.

(March 1, 1926.)

*(Syllabus by Editorial Staff.)*

1. Bills and notes ☞94(1)—Notes representing advances in money *held* not without consideration.

Notes representing advances in money *held* supported by consideration, regardless of whether they were given after advances were made or whether contract to make advances required giving of notes and mortgages.

2. Bills and notes ☞484—In foreclosure of chattel mortgages securing several notes, maker of notes, alleging payment of some, should specifically plead which notes had been paid in full and which were entitled to specific credits.

Where payee of 58 notes sued for balance due on all of them, without stipulating which, if any, had been paid in full, maker, in alleging that some had been paid, should have specially pleaded which had been paid in full, and which were entitled to specific credits, since payment must be specifically pleaded by litigant asserting it.

3. Chattel mortgages ☞285—Where 58 notes were each secured by separate mortgage on separate lots of lumber, total mortgaged property could not be sold in execution of writ of seizure and sale to pay balance due on all notes.

Where 58 notes were each secured by separate mortgage, foreclosure could not be had on total mortgaged property to pay balance due on all notes, since such proceeding would subject part of property to mortgage not covering it, and it is only specific property on which mortgage has been granted that may be subjected to payment of debt intended to be secured by it in execution of writ of seizure and sale.

4. Mandamus ☞157—Prohibition ☞22.

Failure to give notice of intention to apply to Supreme Court for writs of prohibition and mandamus *held* not fatal under rule 15, § 1, of the Supreme Court.

5. Appeal and error ☞71(3)—Relief from decree refusing injunction to restrain further proceedings under executory process cannot be had by appeal (Act No. 29 of 1924, § 5).

Relief from decree refusing injunction to restrain further proceedings under executory process cannot be had by appeal, since suspensive appeal does not lie, in view of Act No. 29 of 1924, § 5, and devolutive appeal would not afford adequate relief, since sale would take place in meantime.

6. Certiorari ☞5(2).

Certiorari and not appeal is proper remedy to correct error of trial court in refusing injunction to restrain further proceedings under executory process.

**7. Execution ☞171(1)—One furnishing bond held entitled to injunction against executory process, on ground not enumerated in statute, applicable only where no bond is given (Code Prac. arts. 739, 740).**

One praying that an injunction against executory process issue on his furnishing bond *held* not restricted to grounds enumerated in Code Prac. art. 739, in view of article 740, stating that purpose of such article was to enumerate grounds on which such injunction may issue without furnishing bond.

Original application of the Northern Lumber Manufacturing Company, Inc., for writs of certiorari, prohibition, and mandamus, to review foreclosure proceedings brought against it by T. Hofman-Olsen, Inc., in which injunction restraining plaintiff from proceeding further under executory process was refused. Preliminary injunction granted.

Albin Provosty and J. H. Morrison, both of New Roads, for relator.

Terriberry, Rice & Young, of New Orleans, and Claiborne & Claiborne, of New Roads, for respondent.

OVERTON, J. T. Hofman-Olsen, Inc., under a contract dated June 16, 1923, agreed to advance to the Northern Lumber · Manufacturing Company, Inc., whom we shall refer to as the relator, the funds required by it to operate its sawmill. To represent each advance made, relator executed its note, secured by chattel mortgage on a specified quantity of lumber, described in each act of mortgage. Fifty-eight advances were made from time to time, and a like number of notes and mortgages were executed. These notes and mortgages range in amount from, say, approximately, $1,200 to $7,900 each, and aggregate, say, $191,919.93, but are subject to credits, which, according to the claim of T. Hofman-Olsen, Inc., leaves $48.924.03, exclusive of interest and attorneys' fees, still due. Considerable portions of the lumber mortgaged were shipped by relator, on orders received from T. Hofman-Olsen, Inc., to purchasers indicated in the orders, and the proceeds derived from the sales were applied by that house on its books to the credit of relator, but no credits were entered on the notes themselves. It was from these sales, or almost entirely so, that the total indebtedness, due by relator, was reduced, leaving the balance above stated.

Relator failed to pay the balance of the indebtedness, which T. Hofman-Olsen, Inc., claimed was due, and the latter caused executory process to issue on the mortgages held by it, and had the sheriff seize the lumber on relator's yards, which it considered subject to its mortgages.

A few days after the issuance of the executory process, relator applied to the district court, in and for the parish of Pointe Coupee, for a writ of injunction to prohibit T. Hofman-Olsen, Inc., and the sheriff from proceeding further under the executory process that had issued.

In its petition for a writ of injunction, relator sets forth substantially, and by reference to documents attached to the petition, the foregoing facts. Relator then alleges that the notes and mortgages executed by it, upon which executory process issued, were executed without consideration, and that it derived no benefit or advantage whatever from their execution. It then alleges, to quote from its petition, that:

"Should the court hold that there was a consideration for said notes and mortgages, which is not admitted but specially denied, then and in that event, in the alternative, and for the reasons hereinafter set forth, petitioner shows that the order for executory process in said suit was inadvertently granted by the court, and that the writ of seizure and sale which issued in pursuance of said order issued illegally and wrongfully and to the great and irreparable damage of petitioner, and that same should therefore be recalled, rescinded, annulled, and set aside, and the sheriff of the parish of Pointe Coupee 'should be restrained and forever prohibited from further proceeding under said writ:

"(a) Because on the face of the petition in said suit it clearly appears that most of the notes foreclosed upon therein have been paid from the proceeds of lumber sold by said T. Hofman-Olsen, Inc., for the account of petitioner; yet said petition does not show which of said notes have thus been paid and which of said notes, if any, are still due and unpaid.

"(b) Because, notwithstanding the fact that the payment of each of said notes was secured by a special mortgage on particular lumber specifically described in each act of mortgage and each of said notes should therefore have been credited with the proceeds of the sale of the particular lumber mortgaged to secure it, the said petition (referring to the petition for executory process), with the statement of account thereto annexed, shows that the proceeds of the sale of the lumber thus mortgaged was applied to all of said fifty-eight notes indiscriminately and without reference to the particular note to which a certain portion of said proceeds should in each case have been applied; and that said petition fails to show the amount of credit to which each or any of said notes is entitled from the proceeds of the lumber sold.

"(c) Because, should the sheriff be permitted to sell the lumber seized in execution of said writ of seizure and sale, it would be impossible for him, under the allegations and prayer of said petition (for executory process) to properly and legally apply to each of the mortgage notes, foreclosed upon, the exact credit to which it would be entitled out of the proceeds of the sale of the lumber under seizure.

"(d) That, for the reasons hereinbefore set forth, and for other reasons, the petition for foreclosure in said suit discloses no right or cause of action for executory process."

The trial judge granted a rule nisi, directing T. Hofman-Olsen, Inc., and the sheriff to show cause why the injunction prayed for should not issue. The former appeared, in response to the rule issued by the judge, and excepted to relator's petition, on the ground that it did not disclose a right or cause of action. This exception was sustained by the trial judge, and the petition for injunction was accordingly dismissed. Relator then made application to this court, through its receivers, the company having been placed in the hands of receivers pending the application for injunction, for writs of certiorari, prohibition, and mandamus for the purpose of having the proceedings had reviewed, the injunction ordered to issue, and the proceedings in the meantime stayed in the lower court. This court ordered the writ of certiorari to issue, and also granted an order for a rule nisi, directing that cause be shown why the relief prayed for by relator should not be granted. The trial judge has made his return, and T. Hofman-Olsen, Inc., has filed exceptions and an answer.

[1] As we have seen, one of the grounds urged, as a reason why the injunction should issue, is that the notes and mortgages were executed without consideration, and were therefore null and void. This ground is not discussed in relator's brief. As a matter of fact, as observed, in effect, by the trial judge, the allegations of the petition, taken as a whole, clearly show that the notes were given to represent advances in money, made to relator by T. Hofman-Olsen, Inc., and that the mortgages were given to secure the notes. The notes and mortgages were given to represent and secure indebtedness due, and it is immaterial whether they were given partly after the advances were made, and partly at the time they were made, or wholly after the advances were made, or whether the contract to make the advances required the giving of the notes and mortgages or not. The notes and mortgages are not without consideration, and hence this ground for injunction possesses no merit.

[2] Relator, as we have observed, also sets forth as a ground for injunction that, although it appears from the petition for executory process that most of said notes have been paid from the proceeds of the lumber sold from time to time, yet the petition does not show which of said notes have been paid, and which are still due, and that the petition should so show, and should also show the

credit, if any, to which each note is entitled, especially in view of the fact that the notes are secured by separate mortgages on separate lots of lumber, which would require the proceeds of the sale of each lot to be credited on the proper note.

Relator is in error when it says that the petition for executory process shows that most of the mortgage notes have been paid. As a matter of fact the petition does not show that a single one of the notes has been paid, but shows that there is a general balance due, amounting to $48,924.02, on all of them, exclusive of interest and attorneys' fees. While each note should have been credited with the proceeds of the sale of the particular lumber mortgaged to secure it, still, if relator was aggrieved by the failure to so credit each note, and contends that some of the notes have been paid in full and that some of them are entitled to particular credits, it should have specially pleaded which notes have been paid in full, and which are entitled to specific credits, for payment must be specifically pleaded and proved by the litigant asserting it. As relator did not specifically plead which notes it claims were paid or which notes are entitled to specific credits, we think that the lower court was correct in refusing to issue the injunction on the ground here urged.

[3] The remaining ground urged for the issuance of the writ of injunction is, as we have seen, that, should the sheriff be permitted to sell the lumber seized in execution of the writ of seizure and sale, it would be impossible for him, under the allegations and prayer of the petition for executory process, to properly and legally apply to each of the mortgage notes foreclosed upon the exact credit to which it would be entitled out of the proceeds of the sale of the lumber seized. The prayer for executory process referred to in the foregoing statement reads as follows:

"Wherefore the premises and annexed documents considered, petitioner prays for an order of executory process herein, and, after due and legal demand of payment, that a writ of seizure and sale issue herein, directing the sheriff of this parish to seize, and, after due advertisement and delay, requisites, and formalities, to sell the property hereinabove described, according to law, and for cash, and without appraisement, to pay and satisfy the claim of petitioner, the sum of $48,924.02, with interest on the sum of $42,924.02, at the rate of 6 per cent. per annum from October 20, 1925, until paid, and with interest on the sum of $6,000 at 7 per cent. per annum from October 20, 1925, until paid, together with 10 per cent. upon said principal and interest as attorneys' fees, and costs, and that out of the proceeds of said sale, petitioner be paid the amount of its claim by preference over all persons whomsoever."

It appears from the allegations of the petition for injunction, as we have said, that 58 notes were given, each secured by a separate mortgage on a separate lot of lumber. It appears from the prayer for executory process, quoted above, that T. Hofman-Olsen, Inc., the applicant for such process, prayed that a writ of seizure and sale issue, and that the property mortgaged be seized and sold to satisfy its claim of $48,924.02, with interest and attorneys' fees. It also appears that the writ was issued accordingly. In other words, it appears that, although 58 distinct mortgages were executed on separate and distinct lots of lumber, the applicant for executory process is nevertheless proceeding as if these mortgages are all against the same property. The effect of so proceeding is to subject some of the property to mortgages which they do not cover. It is only the specific property upon which the mortgage has been granted that may be subjected to the payment of the debt intended to be secured by it in the execution of the writ of seizure and sale.

T. Hofman-Olsen, Inc., suggests that the foregoing objection to the proposed sale is premature, and constitutes only an anticipated objection to the method of crediting

the notes after the sale. The basis for this position is that, when the time comes to make the credits on the notes, should relator feel aggrieved by the manner in which the sheriff proposes to make the credits, he will then have full opportunity to be heard on the objection. In our view, this position is not well based. The mortgage creditor, in foreclosing mortgages held by him against his debtor, should respect the terms of his mortgages, and should not, by going beyond their limits, place his debtor in the position of having to show that certain of the property mortgaged to secure one of the mortgage debts, foreclosed upon, sold for more than was sufficient to satisfy the debt that the mortgage was given to secure, and that the sheriff has no right to apply the residue on the writ of seizure and sale to satisfy a mortgage which that particular property was not mortgaged to secure. Moreover, as we have said, there is no legal sanction for seizing property under one mortgage, by executory process, which was not included in that mortgage; hence it is our conclusion that relator is entitled to relief, if we may grant it under our supervisory jurisdiction.

[4] We make the last statement hypothetically, because T. Hofman-Olsen, Inc., has filed exceptions to relator's application to this court for remedial writs. Relator has applied for writs of certiorari, prohibition, and mandamus. One of these exceptions, though mentioned only in the brief, is that relator, notwithstanding its application for writs of prohibition and mandamus, gave no notice of its intention to apply for those writs, and that the only notice given was of its intention to apply for a writ of certiorari. At one time it was necessary, under the rules of this court, to serve notice of the intention to apply for remedial writs, otherwise the application would not be entertained. However, since then the rule relative to giving notice of the intention to apply

for remedial writs (rule XV, § 1, 136 La. XII) has been amended so as to provide, among other things, "that a failure to give such notice shall not, of itself, be a sufficient cause for dismissing the application, or for recalling a rule nisi." See amendment to section 1 of rule XV, 152 La. VII. Hence our conclusion is that, even should we deem it necessary to act on the application for writs of mandamus and prohibition, still the ground of exception here under consideration is not well founded.

The remaining ground of exception is that the matters set forth in relator's application to this court do not justify the issuance of remedial writs. This exception is based on the theory that the only writ by which this court can properly grant relief from the refusal to issue an injunction is the writ of mandamus, and that this writ will not issue where the grounds for the injunction are those which address themselves merely to the discretion of the lower court; and that, in such instances, the remedy is by appeal instead of by application for supervisory or remedial writs.

[5, 6] As relates to the right of appeal from the judgment refusing to issue the injunction, it may be observed that a suspensive appeal, even if it would afford relief, does not lie from such a judgment, but only a devolutive appeal. Act 29 of 1924, § 5. As relates to a devolutive appeal, it is obvious that it would not afford adequate relief, since the sale in the meantime could take place. Ouachita National Bank v. Shell Beach Construction Co., 98 So. 160, 154 La. 709; Jones v. Bouanchaud, 103 So. 393, 158 La. 27. Therefore, if any relief is to be given, it must be given under our supervisory jurisdiction. Granting that the ground urged for a writ of injunction, upon which we think the writ should have issued, is one which addresses itself to the discretion of the trial court, still we see no reason why we cannot;

under the writ of certiorari that issued herein, correct the error of the trial court, in refusing the writ, by ordering the preliminary injunction, prayed for, to issue.

[7] Before closing, we should say that T. Hofman-Olsen, Inc., also urges that relator, in its petition for injunction, does not set out any of the grounds mentioned by the Code of Practice as being proper grounds for the issuance of a writ of injunction to stop executory proceedings, and cites, in support of its contention, article 739 of that Code. This article enumerates the grounds upon which executory process may be arrested by a writ of injunction, and apparently excludes other grounds. The ground upon which we think the writ should have issued is not one of the grounds there enumerated. However, when article 739 is read in connection with article 740 of the same Code, it appears that the purpose of the former article is merely to enumerate the grounds upon which an injunction against executory process may issue without the furnishing of bond, and not to exclude other grounds for the issuance of an injunction, where bond is required. Such seems to be the jurisprudence. Berens v. Boutte, 31 La. Ann. 112; Hodgson v. Roth, 33 La. Ann. 941; Jones v. Bouanchaud, 103 So. 393, 158 La. 27. Relator herein, in his petition for injunction, has prayed that the writ issue upon his furnishing bond, and we see no sufficient reason why it should not so issue.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment sustaining said exception of no cause of action and refusing to issue said injunction be annulled and set aside, and it is now ordered that said preliminary injunction issue, upon the ground indicated above, upon relator's furnishing bond, through its receivers, in a sum to be fixed by the trial court, T. Hofman-Olsen, Inc., to pay the costs of this application.