O’NIELL, C. J.
 

 The plaintiffs are twelve resident taxpayers owning real estate in the
 
 *1040
 
 city of New Orleans. They brought this suit for an injunction to prevent the board of levee commissioners of the Orleans levee district from entering into a contract, amounting to $611,544.40, for the commencement of work on what -is called “Zone No. 5” of the so-called Lakefront Improvement Project. The project is provided for in section 7 of article 16 of the Constitution, as amended in November, 1928, pursuant to Act No. 292 of that year. The contract which the board intended to enter into is for the construction of a sheet pile bulkhead, to be filled in with sand by means of a suction dredge, covering an area 3,000 'feet square, on the east side of the projection of the east line of the right of way of the Industrial Canal, and extending into Lake Pontchartrain a distance of 3,000 feet from the present shore line. The purpose is to build an aviation field or air port for the city of New Orleans.
 

 The plaintiffs contend that the board is forbidden, by the constitutional amendment, to commence work in zone No. 5 of the lake front project until the work is completed in three of the four other zones, which are on the west side of the Industrial Canal.
 

 The judge of the civil district court issued a temporary restraining order, and a rule on the defendant to show cause why the writ of injunction should not issue. The defendant, answering the rule, pleaded: First, that the plaintiffs, as taxpayers, had no right of action; and, second, that the Lakefront Improvement Project was completed in zones No. 1, No. 2, and No. 3, and was three-fourths completed in zone No. 4, all on the west side of the Industrial Canal. The judge of the civil district court, after hearing evidence, revoked the temporary restraining order and refused to issue the injunction. The case is before us on a writ of eertiorari and petition for mandamus to compel the granting of the injunction.
 

 Our opinion is that the plaintiffs, as taxpayers who contribute to the funds received and expended by the board of levee commissioners, have a right of action to prevent by injunction an unlawful expenditure of such funds. Aside from the fact that five of the plaintiffs own lands adjacent to zone No. 5, and now fronting on the lake, which lands would be directly affected by the contemplated work, the lands of all of the plaintiffs, in common with that of all other landowners in the city of New Orleans, is liable to the burden of any expense that may be incurred by the board of levee commissioners for the so-called Lakefront Improvement Project. In order to carry out the project, the board is authorized by the constitutional amendment (section 1) to issue bonds, notes, and certificates of indebtedness, to the extent of $15,000,000, to bear interest at a rate not exceeding 6 per cent. The board has already expended $4,000,000, and it is estimated that the total cost of the project will be $27,000,-000. It is to hold down the interest-bearing indebtedness, and to try out the experiment in a cautious and conservative method, that the constitutional amendment requires that the work of reclamation and improvement (except as to bulkhead and fill) shall be completed in one zone before it is commenced in another, and that no work shall be commenced in zone No. 5 until the work in three of the four other zones is completed. The purpose of this limitation, as explained in section (h) of the constitutional amendment — • and as explained further by the evidence in this case — is that the board shall sell off (at not less than 30 cents per square foot) enough lots in one zone to aid in the improvement of another zone, and thus to con
 
 *1042
 
 serve the financial outlay. Therefore the taxpayers whose property is subject to the financial burden of this project have the right to complain if the board of levee commissioners attempts to violate the constitutional restriction “that no work shall be commenced in zone five until three zones are completed.” A taxpayer has a right of action by injunction to prevent a political corporation -or board from entering into a contract that will impose a financial burden upon the property of the taxpayer, in violation of law. Handy v. New Orleans, 39 La. Ann. 107, 1 So. 593; Conery v. Water-Works Co., 39 La. Ann. 770, 2 So. 555; State ex rel. Orr v. City of New Orleans, 50 La. Ann. 880, 24 So. 666; City-Item Co-operative Printing Co. v. City of New Orleans, 51 La. Ann. 713, 25 So. 313; Redersheimer v. Flower, Mayor, et al., 52 La. Ann. 2089, 28 So. 299; Johnson v. City of New Orleans, 105 La. 149, 29 So. 355; Hudson v. Police Jury, 107 La. 387, 31 So. 868; Sugar v. City of Monroe, 108 La. 677, 32 So. 961, 59 L. R. A. 723; Murphy v. Police Jury, 118 La. 402, 42 So. 979; Saxon v. City of New Orleans, 124 La. 717, 50 So. 663; Bienvenu v. Police Jury, 126 La. 1103, 53 So. 362; Dunham v. Town of Slidell, 133 La. 212, 62 So. 635; Donaldson v. Police Jury, 161 La. 471, 109 So. 34; Crampton v. Zabriskie, 101 U. S. 601, 25 L. Ed. 1070. In the latter-case, the Supreme Court of the United States declared:
 

 “Of the right of resident taxpayers to invoke the interposition of a court of equity to prevent an illegal disposition of the moneys of the county or the illegal creation of a debt which they in common with other property holders of the county may otherwise be compelled to pay, there is at this day no serious question. The right has been recognized by the state courts in numerous cases; and from the nature of the powers exercised by municipal corporations, the great danger of their abuse and the necessity of prompt action to prevent irremediable injuries, it would seem eminently proper for courts of equity to interfere upon the application of the taxpayers of the county to prevent the consummation of a wrong, when the officers of those corporations assume, in excess of their powers, to create burdens upon property holders. Certainly, in the absence of legislation restricting the right to interfere in such cases to public officers of the State or county, there would seem to be no substantial reason why a bill by or on behalf of individual tax-payers should not be entertained to prevent the misuse of corporate powers. The courts may be safely trusted to prevent the abuse of process in such cases.”
 

 It is argued on behalf of the board of levee commissioners that the plaintiffs in this case are not in fact afraid that their property will be burdened by the board’s commencing work in zone No. 5 at this time, but have brought this suit in the interest only of the owners of fishing camps on the lakefront, adjacent to zone No. 5, whose camps were .built under permits from the board, which permits are in terms revocable at the will of the board, and which camps are liable to be destroyed by the contemplated work in zone No. 5. Some of the plaintiffs admitted, on the trial of the rule, that their object in bringing the suit was to prevent the destruction of the fishing camps referred to; and it is likely that that is largely the motive of all of the plaintiffs in this suit; but the right of a person to institute a lawsuit is not dependent upon or affected by the motive which prompts him in the exercise of his right.
 

 Counsel for the board of levee commissioners have called our attention to the fact that, when the plaintiffs gave notice, in the civil district court, of their intention to in
 
 *1044
 
 voice the supervisory jurisdiction of the Supreme Court, they also asked for and obtained an order for a devolutive appeal, which they have perfected. It is contended on behalf of the defendant that the taking of an appeal from the judgment dissolving the temporary restraining order and refusing to grant an injunction divested the civil district court of jurisdiction in the case; but the only purpose for which the case was taken out of the jurisdiction of the civil district court and brought within the jurisdiction of the Supreme Court was to have the decision of the civil district court reversed, primarily, by the exercise of the supervisory jurisdiction, or, secondarily, by the exercise ,of the appellate jurisdiction, of the Supreme Court. The taking of a devolutive appeal — which is the only appeal allowed by law — from a judgment refusing to grant a preliminary injunction does not prevent the appellant’s invoking the supervisory jurisdiction of the appellate court. Wachsen v. Commission Council of Lake Charles, 162 La. 823, 111 So. 177. See also T. Hofman-Olsen, Inc., v. Northern Lumber Co., 160 La. 839, 107 So. 593.
 

 The plaintiffs’ right to a writ of injunction depends upon whether the board of commissioners has completed its work on the so-called improvement project in zones No. 1, No. 2, and No. 3, in the sense in which the word “completed” is used in the restriction in section (b) of the constitutional amendment, “that no work shall be commenced in zone five until three zones are completed.” The amendment declares that, for the purpose of construction and administration, the total area is divided into five zones, viz.: Zone No. 1, extending from New Basin Canal to Orleans Canal; zone No. 2, extending from Orleans Canal to Bayou St. John; zone No. 3, extending from Bayou St. John to London avenue; zone No. 4, extending from London avenue to Industrial Canal; and zone No. 5, extending from Industrial Canal to the lower limits of the project. And, immediately following this description of the five zones, is the declaration: “And except as to fill and flood and wave protection, said zones shall be completed one at a time, so that one zone shall be finished before another is begun; and provided further that no work shall be commenced in zone five until three zones are completed.”
 

 It is admitted in the brief filed for the board of levee commissioners that the plan of the entire improvement was, from its inception in 1916, that it would pay its own way — as is explained in the constitutional amendment adopted in 1922, pursuant to Act No. 106 of that year, and in the constitutional amendment adopted in 1928, pursuant to Act No. 292 of that year. Section (a) of the amendment gives the board jurisdiction and authority over the bed of the lake, embraced within the area of the five zones and extending a distance not exceeding three miles from the shore line, for the purpose of the reclamation and improvement project. Section (b) defines each of the five zones, and imposes the restriction that, except as to the fill, and flood and wave protection (meaning bulkhead), the work shall be completed in one zone before it is begun in another, and “that no work shall be commenced in zone five until three zones are completed.” Section (c) authorizes the board to lay out, construct, and embellish, and to dedicate to public use, and maintain, a system of parks, beaches, tracts of land, and streets, with the necessary and related and unrelated buildings, and the adjuncts incident to the kind of development contemplated ; and to construct, equip, and maintain playgrounds, places of amusement and entertainment, golf links, gymnasiums, swimming pools, bathing beaches, aviation
 
 *1046
 
 fields, and other like places. Section (d) authorizes the board to contract with the sewerage and water board and with any public utility in New Orleans for the extension or construction of a system of sewerage, and water and drainage facilities and other public utilities in, on, and through the develop.ment, but forbids the board to control or regulate the rates, service, or charges of any such utility. Section (e) authorizes the board to acquire by purchase, donation, exchange, expropriation, or appropriation private property, within certain prescribed limits, adjacent to “the Lakefront Improvement Project,” as it is called in that section of the amendment; and, in the same section, all lands owned by the state, “and within the area of the said works of reclamation and improvement,” are vested in the board; and the board is authorized to enter into an agreement with the city of New Orleans to extend any part of the board’s construction work on the adjacent City Park Extension. Section (f) reserves to the city of New Orleans its police power, and withholds any and all such power from the board of levee commissioners, within the municipal limits. Section (g) declares that “the work of reclamation, construction and improvement” shall be done by the letting of contracts, from time to time, in accordance-with the law in force at the time of the letting of such contracts. Section (h) declares •that the state grants and releases to the board of levee commissioners the title to all lands reclaimed or filled in within the territorial limits of the project, with authority to sell or lease or otherwise dispose of said lands, under certain restrictions, and reserving forever for parks, parkways, boulevards, playgrounds, and places' of amusement and beach purposes, exclusive of roads and streets, an area, or areas, comprising not less than 30 per cent, of the total area of the project, and reserving along the entire lake front an average depth of 500 feet and a minimum depth of 350 feet for public parks, parkways, boulevards, playgrounds, aviation fields, and other places of amusement; and, in this section of the amendment, the board of levee commissioners is given authority and discretion in the matter of employing real estate agents to sell the lands to individuals or private enterprises, provided the commission for such sales shall not exceed the rate or tariff fixed by the New Orleans Real Estate Exchange for sales of property in the city. Section (i) of the amendment authorizes the board of levee commissioners to issue bonds, notes, or certificates of indebtedness, for an aggregate amount not exceeding $15,000,000, to bear interest at a rate not exceeding 6 per cent, per annum, and authorizes the board to secure the payment of such bonds, notes, or certificates of indebtedness by mortgaging any of the lands within the five zones, except public places, and by pledging notes received for the sale of lands, and contracts of lease, and all claims, incomes, and revenues of the board. Section (j) declares that the authority to issue the $15,000,000 of bonds or other evidences of indebtedness is in addition to any such authority otherwise conferred upon the board, but requires the authority of a vote of three-fourths of the members of the state board of liquidation to issue such bonds or other evidence of indebtedness; and, in this section, it is declared that the aggregate amount of all outstanding bonds or other evidences of indebtedness authorized by the amendment, including all liability under contracts for work or material, shall never exceed $15,000,000, and that any bond, note, or certificate of indebtedness issued in violation or in excess thereof shall be null and void. Section (k) declares that the constitutional amendment shall be self-executing. And sec
 
 *1048
 
 tlon
 
 (l)
 
 provides for the creation of a sanitary district, called Lake Pontchartrain sanitary district, comprising the parishes of St. Charles, Jefferson, and Orleans, and to be governed by a board composed of eleven members, with aiitliority to adopt rules and regulations to prevent the pollution of Lake Pontchartrain.
 

 An analysis of the constitutional amendment, therefore, shows, and the testimony given in this case confirms the showing, that the Legislature, in submitting the amendment, or the electors in adopting it, did not intend that the mere bulkheading and filling of the area embraced within any one of the zones should be a completion of the work within that zone. The intention was that the land in. one zone should be made fit for occupancy, and be salable for residence or commercial purposes, before any work, except bulkheading and filling, should be begun on the land in another zone; and that at least three of the four zones on the west side of the Industrial Canal should be thus completed, and fit for occupancy, before any work should be begun in zone No. 5, on the east side of the canal.
 

 It is admitted that the only work that has been done in zones No. 1, No. 2, and No. 3 Is that a temporary, wooden bulkhead has been constructed and filled in with sand, by means of a suction dredge, and a pleasure resort has been established on the beach in zone No. 2. The fill is naturally settling, and in six months or a year the area will require refilling in some places; and it is conceded that a permanent seawall or revetment will be necessary to make the land safe for occupancy for residence or business purposes. No lots have been sold; and in fact no plan has been made for dividing the land into streets, lots, parks, and public places, because the land is not yet fit to be laid off in streets, lots, parks, etc. Until the land is fit for occupancy, and is made ready for sale, the work is not completed.
 

 The judge of the civil district court was of the opinion that the board of levee commissioners had unlimited discretion in the matter of determining when the work in any zone was completed, within the meaning of the constitutional amendment. No doubt the judgment of the board will be entitled to much consideration in that respect when the work will have reached a stage where it will be largely a matter of opinion as to whether it is completed; but the work has not yet reached that stage in any zone. The construction of a bulkhead, or flood and wave protection, and filling in behind it, is not a completion of the work intended. The constitutional amendment says so in emphatic language, when it says that,
 
 except as to j111, and flood and wave protection,
 
 the zones shall be completed one at a time, so that one zone shall be finished before another is begun, and adds “that no work shall be commenced in zone five until three zones are completed.”
 

 Our conclusion is that the plaintiffs have made a sufficient showing to be entitled to a preliminary injunction.
 

 The alternative writ of mandamus Is now made peremptory, and the case is ordered remanded to the civil district court for the granting of a writ of injunction, as prayed for, and for such further proceedings as may be consistent with the foregoing opinion.
 

 LAND and BRUNOT, JJ:, dissent from refusal to grant a rehearing.