ROGERS, J.
 

 Plaintiff’s demands, which are incorporated in an original and two supplemental and amended petitions, are that it be decreed to he the owner of the land described in its original petition; or, in the alternative, that it have judgment against defendant for $1170750. as the value of the property. Defendant excepted to each of the petitions, and, with reservation of the exceptions, joined issue on the merits of plaintiff’s demands. The exceptions were heard and referred to the merits, and, after a trial on the merits, the court below dismissed plaintiff’s petitory action, and, on plaintiff’s alternative demand, fixed the value of the property at $7,000, for which amount it gave plaintiff judgment. Plaintiff appealed, and defendant has answered the appeal. ,
 

 Defendant complains of the failure of the court below to sustain its exceptions. There is no merit in the complaint. The basis of defendant’s contention is that plaintiff, having sued in its original petition for the recovery of the property, is estopped to claim in its supplemental petitions the value of the property and the unconstitutionality of the laws under which it was appropriated.
 

 The demands which plaintiff has cumulated in its action are in the alternative and are not destructive of one another. Its claim is, first, for the property itself on a denial of the right of defendant to take it under the law; secondly, if the law grants such a right, that the law is unconstitutional; and, thirdly, if defendant is legally clothed with the power to appropriate the property, that plaintiff recover the value thereof.
 

 
 *721
 
 The property in dispute is situated in the city of New Orleans. It comprises a tract of land, containing approximately 39.43 acres, which is subdivided (on paper) into 14 squares with the intersecting streets. The tract borders on Lake Pontchartrain and lies north of Adams avenue between the Orleans canal on the east and the New Basin canal on the west, and is within the area of wliat is known as the lake front improvement project. This project is provided for in sedtion 7 of article 16 of the Constitution 1921, as amended by Act No. 106 of 1922 and Act No. 292 of 1928, both of which were duly approved as amendments to the Constitution.
 

 The defendant levee board, under its constitutional authority, and in furtherance of the project to improve the lake front at New Orleans, took possession of the land in dispute and filled it with sand, earth, and shells pumped up from the 'bottom of the lake to a height of approximately 8 feet, the fill being kept in place by a wooden bulkhead built out in the lake at a distance of approximately 2,-500 feet from the shore line. This bulkhead is shortly to be replaced by a permanent concrete retaining wall. The fill extends from West End to a point some distance east of the Industrial canal, and is divided into five zones. The property in dispute lies in zone No. 1, which zone comprises an area of about 300 acres.
 

 The questions presented for determination in the case are (1) whether the property claimed by plaintiff is seashore, and, hence, insusceptible of private ownership; and (2) whether the defendant may appropriate the property, if it is privately owned, for the purpose of improving and selling it at an enhanced value?
 

 The tract of land involved herein forms part of certain larger tracts of land which were acquired by the plaintiff through mesne conveyances under French and Spanish grants. These larger tracts were originally swamp lands covered by an extensive growth of cypress trees, wild grasses, weeds, ■ and brush.
 

 The defendant levee board was organized by legislative act in the year 1890. Subsequently, it secured by donation from the New Orleans Swamp Land Reclamation Company, the predecessor in title of the plaintiff, a right of way through its property for the purpose of constructing a levee along Adams avenue. This was in the year 1893.
 

 The levee when it was constructed served to protect from the storm waters of the lake all that portion of plaintiff’s property, consisting of thousands of acres, lying behind and on the city side of the embankment. This land, under the protection thus afforded, was reclaimed by plaintiff which drained', improved, and sold it off in lots to numerous purchasers. The reclaimed land is known locally as Lake-view, and is now one of the most desirable residential sections of the city, containing many expensive and attractive homes. On the other hand, the effect of the construction of the levee on the property in dispute was to place it between the levee and the lake, subjecting it to the action of the waters of the lake.
 

 There is no doubt that the shore line of plaintiff’s property originally extended a considerable distance north of Adams avenue. But there is also no doubt that, as a result of the erosive action of the waters, • the greater portion of the land at the time it was appropriated by the defendant had become a part of the 'bottom of the lake..
 

 In determining the issues involved in this case, it is of no practical value to ascer
 
 *723
 
 tain whether Lake Pontchartrain should be classed as a salt-water tidal lake or a freshwater inland navigable lake. The legal situation with which we are concerned here is the same in either case. The water bottoms of both classes of lakes are owned by the state to the high-water mark. McGilvra v. Ross, 215 U. S. 77, 30 S. Ct. 27, 54 L. Ed. 95; Barney v. Keokuk, 94 U. S. 324, 24 L. Ed. 224; Civ. Code, art. 451; Milne v. Girodeau, 12 La. 324; State v. Bozeman, 156 La. 635, 101 So. 4; Bruning v. City of New Orleans, 165 La. 511, 115 So. 733.
 

 The record satisfies us that the normal water level of Lake Pontchartrain is 20.7 Cairo datum; that the normal tidal variation does not exceed 4 or 5 inches, the tidal variations in excess of that figure being due entirely to the action of the winds; that 21 Cairo datum would be a conservative figure to fix as the ordinary high-water mark of the lake. The record also satisfies us that 28.2 of the 39.43 acres claimed by plaintiff lie below this ordinary high-water mark, and, hence, is a part of the lake bottom and insusceptible to private ownership. This leaves the amount of land in controversy, as we find it, 11.23 acres.
 

 Plaintiff contends that the appropriation of its property by the defendant levee board was for a speculative and not for a public purpose, and, hence, was in violation of the “due process” and “equal protection of the lawf’ clauses of the federal Constitution. The answer to the contention is, of course, that the appropriation was in the public interest.
 

 The lake front improvement project which, the defendant levee board is presently engaged in executing under constitutional authority has a twofold purpose, viz., to protect the rear of the city of New Orleans from the .flood waters of Lake Pontchartrain, particularly waters coming from the Bonnet Car-re spillway; and, second, to reclaim the lake bottom and swamp land lying within the area of the project, and to transform it into a residential district, with boulevards, recreation parks, playgrounds, and other places for the use of the general public. Board of Levee Commissioners v. Whitney Trust & Savings Bank, 171 La. 28, 129 So. 658. The plan of the entire improvement was, from its inception in 1916, that it would pay for itself, as explained in the constitutional amendments. In order to carry out the project, the defendant levee board was authorized to issue interest bearing bonds, notes, and certificates of indebtedness to the amount of $15,000,000. The levee board has already expended $4,-000,000 on the work, the estimate of the total cost of which is $27,000,000. Welsh v. Board of Levee Commissioners, 168 La. 1037, 123 So. 705.
 

 The lake bottom and adjacent swamp lands within the area of the improvement project were substantially useless in their original condition. Their improvement for the avowed purpose of providing for the safety, health, and welfare of the inhabitants of the city of New Orleans is distinctly such a public benefit as justifies the appropriation of the lands for such purpose by the defendant levee board under its constitutional authority. The original plan of the improvement contemplates that the lands, both submerged and swamp, when filled and improved, are to be sold in order to pay for the work and not for speculative purposes. The fact, however, that some possible pecuniary benefit to the levee board may result from such sales cannot destroy the right of the levee board to appropriate the lands necessary to execute the project. Cf. Sweet v. Rechel, 159 U. S. 380, 16 S. Ct. 43, 40 L. Ed. 188.
 

 
 *725
 
 Another contention which plaintiff argues is that it is entitled to hare the land, or its value, in its improved condition in consequence of an onerous donation which it made of certain lands to the defendant levee board on June 18, 1919. Even if there be any merit in the argument, it cannot be considered, because no such contention was set up by plaintiff either in its pleadings or in its evidence. It is true, a certified copy of the act of donation is in the record, but this instrument, as well as a certified copy of a prior act of donatiorf, was attached to the petition and offered in evidence for the sole purpose of pleading and supporting the plea that defendant was estopped to. deny the land in dispute was insusceptible of private ownership and plaintiff was its owner.
 

 It follows, therefore, from what we have hereinabove said, that the remaining question to be considered is the amount of the compensation to which plaintiff is entitled.
 

 The property was appropriated in the year 1926. Plaintiff’s right of action against the defendant levee board is for the recovery of the value of the property at the time of its appropriation. Const. 1898, art. 312; Louisiana Soc. for Prevention of Cruelty
 
 to
 
 Children v. Board of Levee Com’rs, 143 La. 90, 78 So. 249; section 7, subsection (c), art. 16, Const. 1921, as amended by Act No. 106 of 1922, adopted November 7, 1922.
 

 Two of plaintiff’s witnesses, one a civil engineer and land speculator and the other a real estate broker, testified in regard to the value of plaintiff’s land prior to the time it was filled with sand by the levee board. The first of these witnesses declared that the land as it originally stood was valued at $100 a front foot. The second of these witnesses stated the land in its unimproved condition was worth $135 a front foot. Both these estimates, however, are clearly extravagant, since the uncontradicted testimony in the record is that the land was wholly unfit for either residential or commercial purposes.
 

 On the other hand, one of defendant’s witnesses, a real estate broker, testified that the land in its unimproved condition had no value. Another of defendant’s witnesses, a real estate broker of many years’ experience, testified to the effect that the land at the time it was appropriated possessed some value, but how much he did not undertake to say. He referred, however, to the sale of the neighboring Soniat tract in April, 1918.
 

 For our own part, we are satisfied, from our examination of -the record, that the land prior
 
 to the
 
 time it was taken possession of by the defendant levee board did have some value. It was assessed at $7,000, on which assessment plaintiff paid taxes for a number of years. Moreover, in the month of April, 1918, a tract of land containing approximately 85 acres of land, about one-half of which were submerged, was bought at public sale by the defendant levee board-for a uniform price of $450 per acre. This property was purchased from the Soniat estate. It lies outside the levee on Adams avenue and is in the vicinity of the property in dispute here.
 

 We are unable to find, from our study of the record, any warrant for disturbing the judgment of the court below.
 

 For the reasons assigned, the judgment appealed from is affirmed at the cost of the appellant.