44 So.2d 889

STATE ex rel. HARZ v. CITY OF
· NEW ORLEANS.

No. 39678.

Jan. 9, 1950.

Rehearing Denied Feb. 13, 1950.

————◆————

John T. Charbonnet, Gordon B. Hyde, New Orleans, for relator.

Sidney C. Schoenberger, New Orleans, for respondent.

McCALEB, Justice.

Relator, a physician, seeks to restrain the City of New Orleans from interfering

with his operation of a retail drug business on premises owned by him, bearing municipal number 509 Nashville Avenue, situated in an "A" residential district under the Comprehensive Zoning Law of the City of New Orleans (Ordinance No. 11,302 C.C.S. as amended). He alleges that he commenced using the property for commercial purposes in 1921 utilizing the rear portion of the building as a medical office and conducting a retail drug business in the front under the name of "Purity Pharmacy"; that the property was constantly and continuously used in this manner until April 25th 1949, when representatives of the city ordered him to cease further conduct of his retail drug business for the reason that he was operating a nonconforming venture in a residential district; that the demand is not well founded and that, in order that he might not suffer irreparable injury, the city should be enjoined from interfering with him in the operation of his drug store. On the showing made in the petition, the judge issued a temporary restraining order coupled with a rule for the City to show cause why the relief prayed for should not be granted.

In due course, the city appeared and defended its action (in demanding that relator desist from attempting to operate a drug store) averring that, whereas he had previously conducted a pharmacy, he had discontinued the use of the premises as such during the early part of 1943; that the premises remained closed from that time

until April 15th, 1949, when he attempted to renew operations, and that his action in so doing was unlawful as he had lost the right to employ the premises for a nonconforming commercial purpose.

At the hearing, the parties stipulated that the evidence to be taken would be considered as on a trial of the merits and it was further agreed that, in view of the defense of the city, the only question in contest was whether the premises had been used as a drug store from sometime in 1943 to April 1949. After hearing the evidence touching on this question, the judge, being convinced that the defense of the city was well taken, dissolved the restraining order and dismissed the suit. Relator thereafter obtained a suspensive and devolutive appeal but, before the record was lodged here, he applied for remedial writs contending that the remedy by appeal was inadequate as the city was threatening to close his business before the matter could be heard in this court. Believing that injustice might occur, we issued a writ of certiorari directing the judge to transmit the record so that the validity of the proceedings could be speedily ascertained and directed that, in the meantime, all matters be stayed until a hearing could be had here on the rule nisi, which has now been submitted to us for decision.

The Comprehensive Zoning Law of New Orleans forbids the operation of commercial enterprises in a residential district. However, by paragraph (b) of Section 10,

buildings that were being used for commercial purposes at the time the ordinance was enacted, may continue to be so used provided the existing nonconforming use be not expanded and paragraph (c) declares: "No building or part thereof, used in whole or in part for non-conforming commercial or industrial purposes and located in a Residence or Apartment District * * * according to the provisions of this ordinance, which thereafter becomes and remains vacant for a continuous period of six (6) calendar months shall again be used except in conformity with the regulations of the district in which such building is situated; * * *".

In the case at bar, it is conceded that relator operated the Purity Pharmacy long prior to the passage of the ordinance and that he was entitled to continue the commercial use provided the property did not become and remain vacant for a continuous period of six months. The word "vacant" is defined by the ordinance to mean that the building has not been occupied or used, bona fide, for a nonconforming commercial purpose for six months and "Neither the intention of the owner nor that of anybody else to use a building or lot or part of either for any non-conforming commercial or industrial use, nor the fact that said building or lot or part of either may have been used by a makeshift or pretended non-conforming commercial or industrial use shall be taken into consideration in interpreting and construing the word 'vacant' as used in this ordinance * * *".

Hence, the sole question for decision is one of fact, i. e., whether relator discontinued the bona fide operation of the Purity Pharmacy from 1943 until April 1949, as contended by the city.

From 1921 until the early part of 1943, the Purity Pharmacy was an active drug store, relator employing a registered pharmacist and two other employees. However, it was established by relator's admission and by other evidence that, in the early part of 1943, relator discontinued the services of his employees; that he locked the front doors of the pharmacy, smeared the show windows with a white chalky substance and placed a sign across the front of the building bearing the words "Closed for the Duration"; that, thereafter, relator did not obtain either a city or state license to operate the pharmacy; that he did not even apply for one until April 25th, 1949, when the city refused to issue him a retail license to operate the drug store; that he made no sales tax returns; that the telephone located in the pharmacy was discontinued in January or February 1943 and was not again reinstalled until April of 1949.

Despite these facts, which clearly indicate an abandonment of the drug store business for the duration of the war, relator insists that he was nevertheless operating a pharmacy inside the premises. He testifies that, during the period between May 1943 and April 1949, he filled prescriptions each day and that his customers would use

a door located in a driveway on the side of the property as an entrance and exit in doing business with him. In support of his statement, he submitted a number of his own prescriptions which he claims were filled at the prescription counter of the pharmacy and the testimony of 12 witnesses (all of whom were either his patients or friends), who stated that they had a number of times, between 1943 and 1949, gone to the Purity Pharmacy entering by the side door; that relator filled prescriptions for them during these visits and that they occasionally made small purchases of patent medicines and other merchandise.

Conversely, the city produced three witnesses living in the immediate vicinity of the premises who testified that, as far as they knew, the Purity Pharmacy was closed; that it was a generally accepted fact in the neighborhood that it had discontinued business; that the front door was locked, the windows chalked out, the sign on the door "Closed for the Duration"; that they had no knowledge that the place could be entered by a side door from the driveway and that they had never seen anyone use this door to gain access to the drug store.

The judge of the lower court, who had the advantage of seeing and hearing the witnesses, resolved that relator's evidence was insufficient to overcome the admitted closing of the pharmacy to the public and the notice that the property was to remain closed for the duration of the war. For our part, we fail to detect manifest error in his

conclusion on this question of fact. At best, relator's evidence reveals merely a makeshift operation which the ordinance specifically excludes from consideration in determining whether the property has been vacated.

In their brief to this court, counsel for relator do not argue the facts of the case but request that we continue the stay order in effect until there is a final judgment rendered on the appeal taken from the judgment below. Apparently, counsel misunderstand the purpose for which a writ of certiorari is granted. The writ is defined by Article 855 of the Code of Practice to be an order directed to an inferior judge "commanding him to send * * * a certified copy of the proceedings in a suit pending before him, to the end that their validity may be ascertained." Obviously, when the record is sent to this court in compliance with the writ and the respondent judge and adverse party are ordered to show cause why the relief prayed for by relator should not be granted, the hearing on the rule to show cause involves a review of the errors allegedly committed below. Indeed, it was only because relator complained of error, coupled with the fact that he did not have an adequate remedy by appeal, that this court exercised its supervisory jurisdiction. The fact that relator had prosecuted the appeal is without bearing upon the determination of the issues on the rule nisi. T. Hofman-Olsen, Inc., v. Northern Lumber Mfg. Co., 160 La. 839, 107 So. 593; Wach-

sen v. Commission Council, 162 La. 823, 111 So. 177 and Welsh v. Board of Levee Com'rs, 168 La. 1037, 123 So. 705.

 Here, after an examination of the record, we are convinced that the judge was not in error in refusing to issue an injunction. In such circumstances, it is clear that to do other than recall the preliminary writ and discharge the rule would not be in keeping with the purpose for which the writ was originally granted. Compare Waggoner v. Grant Parish Police Jury, 198 La. 798, 4 So.2d 833, where it was found on a hearing of the rule nisi that there was considerable doubt as to the validity of the judgment under investigation and that, since an appeal was then pending in the same matter, the stay order would be extended until the case could be heard and finally decided on the appeal.

The writ of certiorari issued herein is recalled and the rule to show cause is discharged.