FOURNET, Chief Justice.
The defendants, Mary Frances Klein, wife of James A. Wobbe, and James A. Wobbe, are appealing from the judgment of the District Court annulling and setting aside Patent No. 14891, issued to them by the State of Louisiana on November 24, 1947, following adjudication at a Sheriff’s, sale of a certain portion of ground in Square S264 in the Third District of the City of New Orleans;[1] ordering that the recordation of the Patent be cancelled and erased, and adjudging the lawful owner of the property to be the plaintiff, the Board of Levee Commissioners of the Orleans. Levee District — the appellants to recover from the State of Louisiana, represented in these proceedings by the Register of the State Land Office, also made a defendant, the amount of $565 as reimbursement of the adjudication price plus sheriff’s fee.
*1019 The property, title to which is in dispute, lies within the area between the breakwater constructed by the plaintiff in the bed of Lake Pontchartrain some 2500 feet from the shore line, and the levee which formerly paralleled the shore line on the south, along Hibernia Avenue, to protect the city from the waters of the Lake, which area has been filled in and reclaimed in the development of the lake front improvement project authorized by Article 16, Section 7 of the Constitution of 1921, as amended at various times by constitutional amendments duly adopted by the electorate.[2] On October 21, 1925, the plaintiff Board unanimously approved the recommendations of its Engineer as to the inland boundary of the lake shore property, and the said boundary was officially adopted. The “south property line of Hibernia Avenue” formed a segment thereof. The subject property lies on the lake side of the inland boundary as there fixed; it is located within the third square north o'f Hibernia Avenue, the said square being numbered 5264 and being bounded by New York, Frankfort, Duplessis and Madison *1021 Streets; and' .is described as having a frontage on New York Street of 97-53 feet by a depth (northward) of 319-322 feet.
Shortly after adoption of the above Resolution, the plaintiff entered into a contract with Reynolds Dredging Co., dated November 7, 1925, and the work of dredging the lake and filling the area within the breakwater (later replaced by a seawall) was begun; subsequently, on October 21, 1930, at its regular monthly meeting, the plaintiff Board approved the action of its Executive Committee in adopting a Resolution which further delineated the south boundary line of the lake shore development project and provided "that all property in said area between said south boundary line and Lake Pontchartrain on the north side, not heretofore appropriated and taken possession of, shall be appropriated and taken possession of by this Board, and that any owners of private property thereon shall be paid the market value of said property at the time of its appropriation by this Board * * *.” (emphasis ours) This Resolution was recorded on November 18, 1930. Meanwhile, the Constitution had been again amended [3] to read, in part; “All property owned by the State of Louisiana, or the title to which stands in the name of the State, and all property which, by its nature, situation and location, is not susceptible of private ownership under the present law and Constitution of the State, and within the area of the said works of reclamation and improvement, is hereby specifically vested in the said Levee Board.” Art. 16, § 7(e), paragraph 2.
The plaintiff claims that at the time of the beginning of the lake front development, the property in dispute was part of the bed of Lake Pontchartrain, and was therefore “by its nature, situation and location,” not' susceptible of private ownership, so that title was specifically vested in the Board by virtue of the above constitutional amendment without necessity of any action on the part of the Board. In the alternative, *1023 it contends that in 1932, upon adjudication to the State, title automatically became vested in the Board by the provisions of the same constitutional amendment; and in the further alternative, that the Board acquired title by appropriating the area in 1925, under constitutional authority.
The defendants claim that the evidence sustains their contention that the property in question lay above 20.7 Cairo datum at the time of the adoption of the constitutional amendment of 1928, and was therefore susceptible of private ownership on that date and thereafter;[4] they submit that the constitutional grant of 1928, because it is phrased in the present tense, was operative only as to property owned by the State at the time that the grant became effective and does not embrace property subsequently forfeited for non-payment of taxes. They further contend that the plaintiff is estopped to assert any claim to ownership of the land because (1) the Board failed to place its title claims of record, (2) failed to take any steps to confirm or protect those claims, and (3) received a millage of the taxes paid by the defendants on the property over a period of years.
A careful reading of the constitutional provisions and the Resolutions adopted by the Board pursuant to the authority therein granted[5] convinces us that the District Court was correct in holding that at the time of the adjudication to the State in 1934 for unpaid taxes of 1932, the property was not subject to taxation, title having passed to *1025 the Levee Board by virtue of its having appropriated the property; [6] that any tax assessments made after title had vested in the Board, as well as the subsequent adjudication to the State, were absolutely null and void; and since the State had no title to convey, the defendants by their purchase in 1947 acquired none. It is therefore not necessary to determine in this suit whether the land in question was originally part of the bed of Lake Pontchartrain or the adjacent shore because only the Huet heirs or their assignees have a right to raise the question of private ownership and to claim reimbursement from the Board. The defendants, having failed to allege or show that they are by law subrogated to the rights of the-Huet heirs, cannot be heard to urge (as they do in the alternative claim in their reconventional demand) that they are entitled to recover from the Board “just compensation for the taking of their property,” nor to urge, as did counsel in oral argument, that because of the Board’s failure to make payment, this was not an appropriation within contemplation of law, but rather the taking of private property without due process of law. The contention that the Board is estopped to assert any claim to ownership is equally without merit.
For the reasons assigned, the judgment appealed from is affirmed.

. The property had previously been adjudicated to the State in 1934 for unpaid State taxes of 1932 assessed in the name of Caesar Huet, who had acquired it in 1860 through mesne conveyance from the-Milne Asylum.

. The first of these amendments, Act 106 of 1922, provided, in paragraph (a) : “Said Board [the Board of Levee Commissioners of the Orleans Levee District] shall have full power to construct, maintain, extend, and improve levees, embankments, seawalls, jetties, and other works along, over, and in the bed of Lake Pontchartrain at such distances, not to exceed 2500 feet, from the present shore line as the said Board may determine, and along and on the shores adjacent to said Lake, * * and in paragraph (b) provided: “To enable said Board to perform such work, and to assist in defraying the expense thereof, the State of Louisiana hereby grants and releases to the said Board the title of the State to all lands within any levees, embankments, re- . taining walls, and seawalls constructed hereunder-, and hereby releases said lands from any public trust and authorizes the said Board to reclaim, sell, lease or other- . wise dispose of such portions of said lands •and any other property acquired for the purposes of said improvements as the said Board may deem proper; * * Paragraph (c) authorized the Board to “acquire by donation, purchase, expropriation or appropriation without further legislative authority all private lands or other property in the’ Parish of Orleans and adjoining parishes as may be necessary for any of the purposes of said Board, or of the said improvements, and to improve, or cause the same to be improved, and may pay therefor in the same manner as the said Board now pays for property taken by it on the Mississippi river front in the Parish of Orleans.” (See Official Journal of the House of Representatives, State of Louisiana, 1922, p. 509, House Bill 207; Official Journal of the Senate, State of Louisiana, 1922, p. 573, showing amendments to the Ho.use • Bill; and Official Journal of the House of . Representatives, 1922, in the. section “House Calendar,” p. 83, showing eoncur- • rence by the House in the Senate amendments, and final passage.) . ...

. -Section 7 of Article 16 of the Constitution, -as amended by Act 292 of 1928. In this amendment the text of the section was completely re-written in order to divide the area into zones, to set forth the inland boundary (similar to that adopted by the Board in its approval of October 21, 1925), to more clearly delineate the powers given to the Board, and to integrate the whole. In Section 7(e) the Board was authorized to “acquire by donation, purchase, exchange, expropriation or appropriation, and include in said development and improvements, any private property north” of the described boundary, of which the “south property line of Hibernia Avenue” formed a segment; and the provision for compensation was amended to read: “ * * * In the event of expropriation or appropriation the compensation to be paid shall be the actual cash value of the property before the contemplated improvement was proposed and begun; * *

. The defendants rely on the case of New Orleans Land Co. v. Board of Levee Commissioners, 171 La. 718, 132 So. 121, 123, affirmed 283 U.S. 809, 51 S.Ct. 646, 75 L.Ed. 1427, wherein this Court held “that the normal water level of Lake Pontchartrain is 20.7 Cairo datum; that the normal tidal variation does not exceed 4 or 5 inches, the tidal variations in excess of that figure being due entirely to the action of the winds; that 21 Cairo datum would be a conservative figure to fix as the ordinary high-water mark of the lake.”

. By the 1922 amendment the Board was authorized to “construct, maintain, extend and improve” seawalls, jetties, “and other works” along, over and in the bed of Lake Pontchartrain “at such distances, not to exceed 2500 feet, from the present shore line as the Board may determine, and along and on the shores adjacent to the said Lake;” the State granted and released to the Board title of thq^ State to all lands within any retaining walls and seawalls constructed in the project, and the Board was authorized to acquire by expropriation or appropriation “all private lands * * * as may be necessary for any of the purposes of said Board, or of the said improvements.” On October 21, 1925, by Resolution, the inland boundary of the lake shore property was officially adopted by the Board; this identical boundary, insofar as here pertinent, was incorporated in the constitutional amendment of 1928, and was again repeated in the Resolution approved by the Board on October 21, 1930, and duly recorded.

. That the plaintiff took physical possession of the extensive area, including the property concerned, is conceded; under its contract with the Reynolds Dredging - Company, the land was filled in and raised several feet.