85 So.2d 39

The BOARD OF LEVEE COMMISSIONERS OF the ORLEANS LEVEE DISTRICT

v.

John Charles AURIANNE.

No. 42490.

Dec. 12, 1955.

Rehearing Denied Jan. 16, 1956.

James David McNeill, George M. Ponder, New Orleans, for appellant.

Oliver S. Delery, New Orleans, for defendant-appellee.

FOURNET, Chief Justice.

The plaintiff, The Board of Levee Commissioners of the Orleans Levee District, alleging that it had not been able to agree with the defendant, John Charles Aurianne, on the price to be paid him for certain property appropriated by it in 1930 in con-

nection with the development of the lakefront area bordering Lake Pontchartrain, instituted suit to be adjudged the owner of said property, praying that the court fix a price or valuation thereon "in accordance with the provisions of Article 16 of the Constitution;" and from that portion of the district court's judgment fixing the price on the basis of present day value, instead of "the actual cash value of the property before the contemplated improvement was proposed and begun; * * *" as stipulated in the Constitution,[1] and decreeing that such amount, $4,500, be paid as compensation, the plaintiff has appealed.

The property concerned, being lot No. 10 in Square 5286, bounded by Frankfort Street, Elysian Fields Avenue, Marigny Street and Columbia Street, in Milneburg (New Orleans), is within the area where the plaintiff Board in its development of the lakefront is authorized to acquire property by various means, including appropriation.[2] A house standing on the lot has been occupied by the defendant since 1918, when he acquired the property; the land was then on the lake side of a levee which formerly paralleled the shore line, affording protection to the city of New Orleans from the waters of Lake Pontchartrain. When the lakeshore development was undertaken, the said levee was used as a portion of a boundary line first officially adopt-

ed by the plaintiff in a Resolution of October 21, 1925, as the inland boundary of the project—the same inland, or south shore, boundary being later incorporated in a constitutional amendment (1928) authorizing the plaintiff Board to acquire private property north of said line for inclusion in the development, and again repeated in a Resolution of the plaintiff's Executive Committee, approved by the plaintiff Board on October 21, 1930, which Resolution provided that " * * * all property in said area between said south boundary line and Lake Pontchartrain on the north side, not heretofore appropriated and taken possession of, shall be appropriated and taken possession of by this Board, and that any owners of private property thereon shall be paid the market value of said property at the time of its appropriation by this Board out of the taxes to be levied in the City of New Orleans in accordance with law; the map which is attached to the report of the Chief Engineer is recommended to be made a part of this ordinance. * * *" The said Resolution was duly recorded in the Conveyance Office of the Parish of Orleans and public notice thereof appeared in the press.

By the constitutional amendment of 1928, the total lakefront area was divided into five zones "for the purpose of construction and administration", each to extend between the boundaries indicated; and fol-

1. Art. 16, § 7(e), La.Const. of 1921, as amended, LSA.

2. Ibid.

lowing the description of the respective zones was the limitation that "except as to fill and flood and wave protection said zones shall be completed one at a time, so that one zone shall be finished before another is begun * * *."[3] Meanwhile, beginning in 1925, the work of dredging the lake and filling the area between the inland boundary and the breakwater (later replaced by a sea wall) was begun. No fill was pumped onto the property of the defendant, none being necessary. The land lies in the area designated as Zone 4, and in the process of early development a retention levee was built along the shore line, some 600 feet distant from defendant's property, to keep the section free of the water and slush caused by dredging operations. Following completion of work in three of the zones, the development of Zone No. 4 was undertaken. Negotiations as to the value of the property between the plaintiff and defendant, extending over the past several years, having failed, the present suit was instituted on November 17, 1954, resulting in the judgment from which this appeal was prosecuted.

The plaintiff Board contends that the appropriation was effected in 1930, upon recordation of its Resolution of October 21, 1930, and upon notice being given in the public press; and in the alternative, even

if we should hold that the appropriation was not effected until filing of suit, still the compensation to be paid cannot, according to the express provisions of Article 16, § 7(e) of the Constitution, exceed the actual cash value of the property before the lakefront improvement was begun.

It is the contention of the defendant, on the other hand—and in this he was in effect sustained by the trial judge—that there was no appropriation until the filing of the present suit, and therefore the value of the property at the time of such taking is controlling. Counsel further argues in brief that this property was not needed for levee protection purposes or for any other public use, and is now wanted only so that it may be sold to another individual for his private use.

A study and analysis of Article 16, § 7 of the Louisiana Constitution of 1921, LSA, dealing with the powers and duties of the plaintiff Board—and especially the 1928 amendment of that section when the text was completely rewritten, boundaries of the lakefront project were defined, the Board's jurisdiction was made exclusive, its powers were broadened, and the list of authorized works was appreciably expanded [4]—reveals that the lawmakers intended the development of the lakefront to be one project, to be effected and completed in an orderly

3. La.Const. of 1921, Art. 16, § 7(b), as added by 1928 amendment, LSA.

4. Act 292 of 1928, adopted as a constitutional amendment to Article 16, § 7 of the La.Const. of 1921 in November, 1928.

way over a period of time; *that there was to be one appropriation and one scheme of payment,* all fixed in the Constitution, so that private property owners would be uniformly compensated for their lands. Besides the zoning of the project as a whole, breakwaters and water basins were added to the list of works to be located and constructed; [5] the dedication of areas as parks, playgrounds and beaches was contemplated in furtherance of an overall design; [6] the work of reclamation, construction and improvement was to be accomplished by letting out contracts therefor from time to time, "in accordance with law at the time of the letting of said contracts"; [7] and in order to forestall demand of a higher price for later developed property, as well as to insure uniformity of compensation throughout the area, there was included the express provision that "* * * *the compensation to be paid* [for property expropriated or appropriated] *shall be the actual cash value of the property before the contemplated improvement was proposed and begun;* * * *.*" [8] (Emphasis supplied.)

The plaintiff in its Resolution approved on October 21, 1930, declared that *all* private property in the described area which had not previously been appropriated was then appropriated, and gave public notice of such action in the press; that the work

in Zone 4 (other than bulkheading and filling) was not undertaken for many years was due to the constitutional requirement that work in one zone had to be completed —interpreted by this Court to mean fit for occupancy, and salable [9]—before that in another is begun, and cannot profit the defendant in the award of compensation.

There is the testimony of only one witness as to the value of the lot and improvements in 1930; the evidence on that score is too meager, and is not satisfactory, so the case will be remanded for additional proof.

For the reasons assigned, the judgment of the lower court is set aside, and it is now. adjudged that the Board of Levee Commissioners of the Orleans Levee District be decreed to be the owner of: A certain lot of ground and improvements thereon, in the Third District of the City of New Orleans, at Milneburg, in square bounded by Frankfort Street, Elysian Fields Avenue, Marigny Street and Columbia Street, designated as Lot No. 10, which said Lot No. 10 measures 28 feet and 2 inches front on Frankfort Street by 150 feet in depth French Measure. It is further ordered, adjudged and decreed that the case be remanded to the lower court to receive evidence and fix the valuation of the above described property as of the date of its ap-

---

5. Section 7(a) of Art. 16.

6. Section 7(c) of Art. 16.

7. Section 7(g) of Art. 16.

8. Section 7(e) of Art. 16.

9. Welsh v. Board of Levee Com'rs of Orleans Levee Dist., 168 La. 1037, 123 So. 705.

propriation by the plaintiff, that is, October 21, 1930, and to render judgment accordingly, all in conformity with Article 16, § 7 of the Louisiana Constitution of 1921, as amended; LSA.

McCALEB, Justice (concurring).

While I entertain doubt that the passage and registration of the resolution of plaintiff's Executive Committee, which was approved by plaintiff on October 21, 1930, effected an appropriation of defendant's property since there has never been an actual entry on his land,[1] it makes no material difference in the result of this case as defendant's compensation can be no greater than the value of his property in 1930 or, more accurately, the time when the Board proposed and began the lakeshore improvement project. Hence, if, as I believe, the trial judge was correct in regarding this to be an expropriation proceeding, defendant is not entitled to be paid the market value of his land as of the date of the institution of the suit in view of the plain provisions of Section 7(e) of Article 16 of the Constitution that:

"In the event of *expropriation* or *appropriation* the compensation to be paid shall be the actual cash value of the

[1]. The general rule is that the taking is not complete until the grantee of the power of eminent domain enters the land. 29 C.J.S., Eminent Domain, § 135, and cases cited in support of the text; Marion

property *before the contemplated improvement was proposed and begun;* * * *." (Italics mine.)

For this reason, I respectfully concur.

& R. V. R. Co. v. United States, 270 U.S. 280, 46 S.Ct. 253, 70 L.Ed. 585 and United States v. Dickinson (United States v. Withrow), 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789.