BLANCHE, Judge.
Plaintiff-appellant, State of Louisiana, through the Department of Highways, appeals a judgment awarding to defendant-appellee, Theodore A. Lirocchi, the sum of $75,335,[1] subject to a credit of $8,877 pre *805 viously deposited in the registry of the court, together with interest at the rate of 7 percent per annum on the difference from the date of taking, March 26, 1971, until paid, and for all costs, including $2,050 in expert witness fees. The defendant, Theodore A. Lirocchi, answered the appeal, seeking additional compensation.
The award was made for the expropriation of 2.818 acres of defendant’s land, including a .222 acre drainage servitude, which was conceded to be the equivalent of a taking in full ownership in connection with the construction of State Route Louisiana 1-10.
The area taken was part of a 60-acre tract that defendant had previously designated as Forest Lawn Subdivision, near Dutchtown, Louisiana. However, for purposes of the instant suit all of the appraisers considered the defendant’s property as comprising a total of only 3.918 acres, representing that area of the subdivision reserved for commercial development. All other lots in the subdivision are deed restricted to residential use.
The 3.918 acre tract is located at the westernmost edge of the 60-acre tract, at the intersection of two hard-surfaced asphalt highways, Louisiana Highway Nos. 621 and 73. Prior to the taking, the property had approximately 500 feet frontage on Louisiana Highway 73 and approximately 300 feet frontage on Lousiana Highway 621. The tract is rectangular in shape, level, well drained, and is supplied with gas and electrical utilities. Its location is in a rural-industrial area, approximately 4 miles northwest of Gonzales, Louisiana, and is not subject to any zoning restrictions.
The taking involved all of the frontage on Louisiana Highway 73 and all except 60 feet of the frontage on Lousiana Highway 621. Because of the position of the drainage servitude, the taking leaves a jagged, irregularly-shaped remainder of 1.1 acres.
Both appraisers for the Department considered that the highest and best use of the tract at the time of taking was residential. Using the comparable sales method of evaluation, Oren Russell valued the tract at $3,150 per acre, and Daniel G. Carlock, Jr., arrived at a figure of $3,100 per acre.
The defendant’s appraisers contended that the highest and best use of the tract at the time of the taking was commercial.
The trial judge agreed with defendant’s appraisers and found that the highest and best use of the tract was commercial, based upon its location at the intersection of two heavily traveled highways and its proximity to the petro-chemical industrial complex located along the Mississippi River. He also considered that its ease of access to neighboring Gonzales and Baton Rouge made it a highly desirable location. Additionally, he noted that the tract was designated as commercial on the subdivision plat.
He rejected the Department’s contention that the highest and best use of the property was residential on the basis that the comparable sales used by its experts were unrealistic. The Department’s experts contended that there was no significant difference between the market value of residential and commercial tracts in the area. However, the trial judge found that they reached an erroneous conclusion since all of their comparable sales consisted of residential property except for one, and the trial judge found that it was not really comparable to the subject tract. He, therefore, concluded that they failed to prove there was no difference between the value of commercial and residential property in the area.
By contrast, the trial judge found that the defendant’s appraisers used more realistic comparables, most of which were located at other similar highway intersections. He agreed with the defendant that the highest and best use of the subject *806 tract was commercial. The record amply supports this finding and it will not be disturbed on appeal.
The most complex issue presented on this appeal is the value of the commercial tract.
The defendant contends that the tract had two distinct commercial uses and, accordingly, it also had two separate values. He argues that the .9 acre corner portion of the tract was best suited for a major service station site and, therefore, that portion of the tract had the highest commercial value. He further argues that the remainder would best be suited for use as a shopping center development consisting of service-oriented establishments such as a drug store convenience food store, laundry, et cetera, and that it had a correspondingly lesser value than the service station site.
The trial judge refused to accept the contention that the highest and best use of the .9 acre corner of the tract was as a service station site. Accordingly, he placed one value on the entire tract, that is, $20,000 per acre, which was the value for ordinary commercial land in the area and which value was clearly substantiated by defendant’s appraisers.
The trial judge rejected defendant’s contentions regarding the corner, even though he was particularly impressed with the appraisal of one of defendant’s experts, John Lejeune, a service station site locator for Texaco and Humble Oil Companies.
Although the trial judge noted that all of Lejeune’s criteria for a good service station site seemed to be met by the subject tract, the trial judge, in his Reasons for Judgment, stated that he was rejecting Le-juene’s conclusion because it was based in part upon a count of residences, businesses, and traffic conducted by Bruce E. Prairie in September of 1974. Since the taking occurred in March, 1971, he concluded that Prairie’s report did not prove that the referred-to counts existed in 1971. In view of the foregoing, he concluded that Le-jeune’s appraisal was based upon inaccurate data.
The trial judge erred when he concluded that Lejeune relied upon the 1974 report. We note from the record the following testimony of Lejeune:
“Q. Now, perhaps we left the court with an [erroneous] impression with regards to Mr. Williams’ appraisal. You did not rely on Mr. Prairie’s traffic count in making your appraisal did you ?
“A. No, sir. My appraisal was made as I said April 16, 1971, and it was updated before this trial, and I at the time had no knowledge of this traffic count.
“Q. So as I understand it insofar as traffic is concerned you relied upon your own observation regarding traffic.
“A. Solely on my own judgment based on many many appraisals of other service station sites.
“Q. And not — did not rely upon Mr. Prairie’s traffic count ?
“A. No, sir, I did not.”
(Record, pp. 561-562)
The appraisal of Kermit Williams, defendant’s other expert, was also prepared prior to Prairie’s report. It is, therefore, evident that neither of the defendant’s appraisers relied completely upon Prairie’s report to determine that the tract would support a service station.
Perhaps the confusion concerning the basis of the appraisals arose during Williams’ testimony. Williams’ report was prepared August 13, 1974, and evaluated the property as of the date of taking, March 26, 1971.
From the record, at page 493, it is obvious that Williams made his initial appraisal based upon his own information. *807 However, after reaching his initial conclusion that the tract was best suited for a service station, Williams testified that he made a feasibility study to determine whether or not his judgment was correct. It was in that context that he, and not Le-jeune, utilized Prarie’s report (which is dated after Williams’ appraisal) to reinforce his prior conclusion that the tract would support a major service station.
Based upon the language in his reasons, we can safely assume that were it not for his erroneous conclusion concerning the basis of Lejeune’s appraisal, the trial judge would have agreed with defendant’s contention that the highest and best use of the .9 acre corner portion of the subject tract was as a service station site. Furthermore, the reports of both of defendant’s experts contain ample evidence to support such a finding. We, therefore, conclude that the corner of the subject tract should have been valued as a service station site rather than as an ordinary commercial site, as was the remainder.
Since the trial judge did not determine the value of the corner as a service station site, we must now make that finding, based upon the evidence presented at trial.
In this regard, LSA-R.S. 19:9 and LSA-C.C. Art. 2633[2] require that the landowner be paid the true value of the land on the date of the taking, including any enhancement of value brought about by the contemplation that the improvement would be built. However, any enhancement occurring after the contemplated improvement becomes a proposed improvement is to be deducted from the value given to the landowner. See, also Shreveport Traction Company v. Svara, 133 La. 900, 63 So. 396 (1913).
The rationale of the statutes and jurisprudence is clear, that is, no one property owner should be required to bear a disproportionate share of the burden of a public improvement. If an owner chooses not to sell his land during the period of contemplation, he should not be penalized by receiving less from the State when the land is ultimately expropriated. For that reason, this defendant landowner cannot be penalized merely because he held onto his land from the date of purchase in 1957 until a portion of it was eventually taken in 1971. On the other hand, an owner should not be allowed to profit by holding his land after the State is committed to build the project and then to force the State to compensate him based upon the enhancement in value that was brought about simply by building the project. The point at which the landowner cannot receive further enhancement is defined by the statutes as that point where the contemplated improvement becomes a proposed improvement.
The above propositions are not in dispute in this lawsuit. However, as will be seen infra, the issue to be resolved herein is at what point a contemplated improvement becomes a proposed improvement.
As mentioned hereinabove, the Department’s experts contended that the highest and best use of the entire tract was residential, and, therefore, they did not submit opinions concerning the value of the property based upon commercial service station use. Since we have decided that the tract had commercial use, their evaluations of the subject tract are of little usefulness.
However, the landowner contended that the .9 acre corner of the tract is best suited for a service station site and his experts utilized comparable sales to arrive at its value. We accept this method of evalua *808 tion as being correct. State, Department of Highways v. Smith, 304 So.2d 77 (La.App. 1st Cir 1974); State, Department of Highways v. James, 226 So.2d 535 (La. App. 4th Cir. 1969).
In this connection, the main comparable relied upon by the defendant’s experts is the January, 1968, sale of .602 acres from Bilwood Smith to Gulf Oil Corporation for $57,500, or $95,514.95 per acre. Since that property is located directly across Highway No. 621 from the subject tract, it would ordinarily be the best indication of the value of the subject tract.
However, the Department objects to the Use of the Smith sale, claiming that it reflects enhanced value brought about by the proposed improvement and that its use as a comparable would, therefore,' give the subject tract the benefit of enhancement of value due to the proposed project. As we have noted, this would be in contravention of R.S. 19:9 and Civil Code Article 2633.
The defendant, of course, contends that the Smith sale transpired prior to the improvements becoming proposed and urges that it reflects only enhanced value due to the mere contemplation that the improvement would be built. If the defendant is correct, the Smith sale should be utilized since it is obviously the best indication of the value of the subject tract, being located directly across Highway No. 621.
In this context and since the Department does not contest the validity of the Smith sale (having utilized said sale in its own appraisal of the after-value of the subject tract), we must decide whether or not the Smith sale transpired prior to the time the contemplated improvement became a proposed improvement. In order to do so, we must determine the meaning of the term “proposed improvement” as it is used in the statutes.
We find that although R.S. 19:9 and Civil Code Article 2633 set forth the law in this area, they fail to establish guidelines by which to determine at what point the contemplated project becomes proposed. However, we note from the Shreveport Traction Company case, supra, that it is this Court’s duty to make that determination and that there is no one fixed point at which any given improvement becomes proposed. To the contrary, the determination depends upon the facts and circumstances of each case.
The Shreveport Traction Company case also informs us that an improvement becomes proposed when “the period of uncertainty — of mere hope, speculation, anticipation, or contemplation” which is necessarily associated with the building of public improvements has passed. Stated differently, the Court said that an owner is entitled to the value of his property as of the moment it is legally demanded for a proposed improvement.
The project, therefore, becomes proposed (1) at the first moment the State declares that the improvement will, in fact, affect the property; or (2) at the first moment it is reasonably certain that the property will be affected, even though the State has not yet declared same. See State, Department of Highways v. Port Properties, Inc., 316 So.2d 749 (La.App. 1st Cir. 1975).
In the record of the instant case, the first indication that the improvement would affect the Smith tract was contained in a July, 1969, Department of Highways map, Exhibit P-3. That map reflected that both the subject tract and the Smith tract would be affected by an interchange to be built at the intersection of the improvement and Louisiana Highway 73. Subsequently, in November, 1969, the resolution of the Board of Highways confirmed the fact that the property would be affected. The Smith tract was purchased in January, 1968, prior to the publication of the map and the resolution of the Highway Department.
*809 To show that at the time of the Smith sale there was no reasonable certainty that the tract would be affected by the improvement, the defendant introduced a file containing the minutes of public hearings held by the Department prior to construction of the improvement, including correspondence pertaining thereto. It is obvious from a reading of that evidence that the exact route of the improvement was subject to much confusion up to and including the date of the Smith sale.
As defendant noted in his brief, it is conceivable that the Department knew prior to July, 1969, that the Smith tract would be affected, but, nevertheless, it did not disclose that information to the public or to the landowner. We agree that no disclosure was made, but we think it was more probable than not that the reason for the nondisclosure was that the Department itself did not know for certain whether the Smith tract would be affected. At the trial of this matter, the Department was aware that the defendant was claiming enhanced value based upon the Smith sale, yet it failed to come forward with any evidence to prove that either the general public or the owner of the Smith tract knew or should have known prior to July, 1969, that the tract would be affected. Of course, the presumption from this failure is that there is no evidence to substantiate the Department’s claim that the improvement was proposed prior to July, 1969.
In effect, the Department would have this Court deprive the landowner of the enhancement rightfully due him under the law, based merely upon the Department’s own unsubstantiated insistence that the project had become proposed prior to the Smith sale. In exercising our function of determining at what point a contemplated public improvement becomes proposed in accordance with Shreveport Traction Company, supra, we demand more objective standards than those offered by the Department. We find that the burden is certainly upon the State, when it claims a sale was influenced by a proposed improvement, to show that the improvement was, in fact, proposed at that time. Innuendos, inferences and suppositions are not enough.
It appears from the record that the State had not declared that the Smith tract would be affected in January, 1968, nor aside from that, was it reasonably certain that such would be the case. Accordingly, we hold that the sale of the Smith tract occurred prior to the time that the contemplated improvement became proposed, and the sale of that tract is, therefore, a valid comparable by which to value the subject tract.
Our rationale that some objective manifestation by the expropriating authority is necessary to change a contemplated improvement into a proposed improvement is supported by Board of Levee Commissioners v. Aurianne, 229 La. 83, 85 So.2d 39 (1955). In Aurianne, the Supreme Court was forced to determine at what point a contemplated appropriation of property to expand the Lake Pontchartrain Levy System became a proposed project. The Court unhesitatingly decided that the point in time was the date of the solution by the Board of Levy Commissioners to appropriate the property. This was so, even in view of the fact that two years prior to the resolution a state constitutional amendment made it clear to the public that the project would, in fact, be undertaken. We realize that the Aurianne case is not controlling in this expropriation suit since it involved an appropriation of property under other constitutional provisions. However, it illustrates that the courts of this state look to some objective standard to determine the point at which a contemplated public improvement becomes proposed.
See, also, United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1943), wherein the Court said a landowner can no longer receive increases in value of his land after the point where the property probably comes within the scope of the *810 project and the government is committed thereto. The Court further defined the point wherein the landowner ceases to receive further enhancement as that point in time when the property becomes clearly within the confines of the project. The confines of the instant project were unknown on the date of the Smith sale.
The evidence indicates that the average major service station site consists of .9 acre. Since the Smith tract sold for $95,514.95 per acre, the defendant is, therefore, entitled to recover $85,963.45 for the value of the .9 acre corner of the subject tract.
The trial judge found that based upon the testimony of the defendant’s experts the remainder of the tract had a value of $20,000 per acre for commercial purposes. That finding is clearly supported by the record and will not be disturbed on appeal. State Department of Highways v. Browning, 315 So.2d 784 (La.App. 1st Cir. 1975); State, Department of Highways v. Spillman, 276 So.2d 905 (La.App. 1st Cir. 1973); State, Department of Highways v. Hickman, 277 So.2d 525 (La.App. 3rd Cir. 1973). Therefore, the defendant is entitled to recover $38,360 for the remaining 1.918 acres of the subject tract.
The trial judge awarded severance damages after finding that the remaining 1.1 acres had been reduced in value to $2,750 per acre. As he stated, a mere glance at the irregular configuration of the remainder reveals great difficulty in any attempted use thereof. The drainage servitude causes the southern one-third of the remaining 1.1 acres to be almost completely useless. He, therefore, found that the remainder was damaged by $17,250 per acre (the before-value of $20,000 less after-value of $2,750), or a total of $18,975. This determination is amply supported by the record and will not be disturbed.
In view of the foregoing, the judgment of the trial court is amended so as to increase the total award to defendant, Theodore A. Lirocchi, to the sum of $143,298.-45, being $85,963.45 for the .9 acre corner of the subject tract, $38,360 for the 1.918 acre remainder, and $18,975 as severance damages. In all other respects the judgment is affirmed.
The appellant is cast for all costs of these proceedings as may legally be assessed against the State of Louisiana.
AMENDED AND AS AMENDED, AFFIRMED.

. An amended judgment incorrectly listed this amount as “$75,355,” but both parties to the suit acknowledge the correct amount to be “$75,335.”

. LSA-C.C Art. 2633 provides:
“In estimating the value of the property to be expropriated, the basis of assessment shall be the true value which the land possessed before the contemplated improvement was proposed, and without deducting therefrom any amount for the benefit derived by the owner from the contemplated improvement or work.”