CHIASSON, Judge.
Plaintiff-appellant, the Department of Highways, State of Louisiana, appeals a judgment rendered in two consolidated cases which awarded.defendant-appellee, C. F. Breaux Investment Company, Inc., $179,-367.00 less $55,161.00 already paid into the registry of the court, together with legal interest on the balance. The sum awarded was in compensation for land expropriated for state highway use and for severance damages to the remainder of defendant’s property. Expert witness fee was fixed at $2,500.00 and taxed as costs to the State. The defendant has neither appealed nor answered the appeal.
In suit number 11,538 the State offered $14,922.00 for the land and improvement consisting of a concrete street and in suit number 11,539 the State offered $40,239.00 for the land. No offer for damages in either suit was made by the State. The offers were refused by the defendant and the State deposited those sums in the registry of the court.
On May 8, 1975, the State expropriated two parcels of defendant’s land for the construction of the new Bayou Dularge Bridge and relocation of La. 315 in the City of Houma, Terrebonne Parish, Louisiana. The total area of defendant’s unimproved property consisted of 36.603 acres in the form of a triangle. One side was bounded by the Houma Golf Club and the other side is bounded by a residential subdivision, both of which sides join to form the front of the property on U.S. 90, with a width, including a servitude of passage, of fifty feet. The subject tract consists of approximately ten clear acres of high ground, and the remainder is somewhat lower and wooded. The part taken by the State was 4.991 acres and was that part of the tract which bordered along the Houma Golf Club. The taking separated the remaining 31.612 acres from the said golf club with a four-lane highway and approaches to a high level bridge.
The trial court accepted the values as found by defendant’s expert, Mr. L. X. La-mulle, and fixed compensation for the tract taken, in the written reasons, at $77,809.00 and allowed $101,588.00 as severance damages to the remainder of defendant’s property, for a total of $179,397.00. The judgment, however, was in the total amount of $179,367.00.
The State contends that the trial judge was manifestly erroneous:
(1) In accepting Mr. L. X. Lamulle’s testimony in full;
(2) In failing to consider the cost to fill the property in or to bring up its elevation;
(3) In finding that the part taken had a higher value than the average value of the whole tract;
(4) In finding that the remainder of the property had been damaged;
(5) In finding that the remaining property received no special benefits by the addition of 1400 feet of frontage.
In expropriation cases, the property owner is to be compensated at the market value of the property taken according to its highest and best use. State, Through Department of Highways v. Hoyt, 284 So.2d 763 (La.1973); State, Department of Highways v. Romano, 343 So.2d 222 (La.App. 1st Cir. 1977); State, Department of Highways v. Baton Rouge Realty Company, Ltd., 339 So.2d 1317 (La.App. 1st Cir. 1976). Further, in ascertaining the market value, much discretion is given to the trial judge in weighing the testimony of experts, and his finding of value based on such evidence will not *1323 be disturbed unless clearly erroneous. State, Department of Highways v. Lirocchi, 329 So.2d 803 (La.App. 1st Cir. 1976), writ refused. State, Department of Highways v. Browning, 315 So.2d 784 (La.App. 1st Cir. 1975).
The basic contention of the State is that part of the subject property has been placed in the Special Flood Area by the Department of Housing and Urban Development, and that, for flood insurance purposes, the slab of a home must be at an elevation of plus five feet.
The grade elevation maps show that the front portion of the property is at an elevation of plus ten (as high as any area in Terrebonne Parish) and gradually slopes to the rear. Half of the property is at an elevation of at least plus five and, the rear portion of the property has elevations ranging from plus one to plus four and one-half.
The State, therefore, added as a cost of development the amount necessary for hauling fill to elevate the whole of the property to plus six feet, the alleged minimum slab grade.
The State’s appraisers had originally made an appraisement of the value of the property taken at anywhere from $7,500.00 to $9,000.00 plus per acre. However, at the trial the appraisers updated their appraisals taking into consideration the amount of fill that would be necessary to raise the property to a level of six feet and concluded that the value of the property was only $1,470.00 per acre.
The property is within the City limits of Houma and is zoned residential.
There is evidence in the record that Ter-rebonne Parish does not have an ordinance establishing a minimum slab grade; that subdivisions are still being developed in the Special Flood Hazard Area in Terrebonne and Lafourche Parishes; that under the latest F.I.A. ruling, only the concrete slab of the home should be at plus five, the rest of the lot can be lower and the streets even lower for drainage purposes; that by cutting of streets and grading the higher elevation toward the lower areas, which is generally done in this locale,-there would be no prohibitive costs involved in bringing all of the property to a sufficient grade level; that if fill is required at all, it would be a minimum amount to raise the very small total areas which have to meet certain elevation requirements; that most of the elevations in Ellendale Subdivision, which has homes in the price range of $100,000.00 to $500,000.00, were between zero and plus two; and that the subject property was more valuable than Ellendale because of its superior location.
Mr. Lamulle testified that the highest and best use of the property adjacent to the golf course was for luxury type homes. The remainder would have been middle to upper middle class luxury type homes by virtue of developing the part along the golf course. Though all of the property is residential there is evidence to support the trial judge’s finding that the part taken, paralleling the golf course, had a higher value than the average value of the whole tract.
Mr. Lamulle used as raw average compa-rables undeveloped tracts lying within the city limits in close proximity to the subject property and made adjustments for size, location, frontage and utilities to adjust the comparables to the subject property. He valued the part taken at $13,987.00 per acre and the remaining at $9,000.00 per acre before the taking. He arrived at the same value by use of the subdivision developmental analysis method.
Severance damages were determined by taking the difference between the fair market value of the property immediately before the taking and the value of the remainder after the taking. Mr. Lamulle used the same methods to obtain the value of the remainder after the taking and determined that value to be $5,000.00 per acre. The difference, $4,000.00, times the remaining acreage, 31.612, equals $126,-448.00. However, because the owner was compensated for the part taken at a higher than average value, the difference times the acreage totaled $24,890.00, which was subtracted from $126,448.00 to arrive at severance damages in the amount of $101,- *1324 558.00. According to Mr. Lamulle, the reduced value of the remainder was due to several various reasons, among which was the design that was necessary of the lots afterwards, the influence of the elevated bridge structure adjacent to the remainder property, the loss of frontage on the golf course, and the adverse effect of the four-lane highway on the desirability of the property for residential use, thus reducing the highest and best use of the remainder property to more modest type of residence. The highway is a major thoroughfare with curbing on each side. Access to the highway would have to be applied for and approved by the Highway Department. Contrary to what the State argues, this is not “a mirror image of the existing tracts across the golf course” because of the difference in the highway construction and access thereto.
The State next contends that the new highway would specially benefit the remainder in the amount of $600,000.00 by adding 1400 feet of frontage and changing the character of the remainder to commercial property. There is ample evidence in the record to support a finding that there was no “reasonable possibility” of a zoning change.
While each side attacks the methods and comparables used by the other to arrive at a value of the property and severance damages, the record in this case justifies the trial court’s acceptance of the valuation placed upon the property by defendant’s expert.
We find no manifest error committed by the trial court and therefore affirm its judgment.
AFFIRMED.