# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 03-1022


**LILLIAN E. LANDAICHE ROY, ET AL.**

**VERSUS**

**SHERIFF BILL BELT, ET AL.**


************

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT,
PARISH OF AVOYELLES , NO. 99-6398,
HONORABLE WILLIAM P. POLK, DISTRICT JUDGE

************

## MICHAEL G. SULLIVAN
## JUDGE

************

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and Michael G. Sullivan, Judges.


**REVERSED AND REMANDED.**



**Ricky L. Sooter**
**Provosty, Sadler, deLaunay,**
**  Fiorenza & Sobel**
**3600 Jackson Street, Suite 106-A**
**Alexandria, Louisiana  71301**
**(318) 445-3631**
**Counsel for Plaintiffs/Appellants:**
    **Lillia E. Landaiche Roy**
    **Constance Elizabeth Roy**
    **Catherine Marie Roy**
    **Sheldon Louis Roy**

**R. Gray Sexton**
**Attorney at Law**
**6513 Perkins Road**
**Baton Rouge, Louisiana  70808**
**(225) 763-8777**
**Counsel for Plaintiffs/Appellants:**
 **Lillia E. Landaiche Roy**
 **Constance Elizabeth Roy**
 **Catherine Marie Roy**
 **Sheldon Louis Roy**

**Rodney M. Rabalais**
**Attorney at Law**
**Post Office Box 447**
**Marksville, Louisiana  71351**
**(318) 253-4622**
**Counsel for Defendant/Appellee:**
 **Law Enforcement District of Avoyelles Parish**
 **Bill Belt, Sheriff of Avoyelles Parish**

**Robert A. Johnson**
**Attorney at Law**
**Post Office Box 468**
**Marksville, Louisiana  71351**
**(318) 253-0935**
**Counsel for Defendant/Appellee:**
 **Avoyelles Parish Police Jury**

SULLIVAN, Judge.

Lillia Roy and her children, Constance Roy, Catherine Roy, Sheldon Roy and Lillia Roy, filed a boundary action against The Law Enforcement District of Avoyelles Parish, Louisiana (Sheriff Belt)[1]. They amended their petition to add a claim for inverse condemnation. After a trial, judgment was rendered in favor of Sheriff Belt, establishing Bayou Savage as the boundary between these respective properties and denying the Roys' claims for inverse condemnation. For the following reasons, we reverse that judgment and remand for a determination of the appropriate damages.

### Facts

The Roys and Sheriff Belt own adjoining properties situated in Avoyelles Parish. In 1978, 1986, and 1992, Sheriff Belt or his predecessor built three buildings which the Roys claim encroach upon their property. The chain of title for both properties is derived from a common ancestor in title, J. Clifton Cappel, who acquired 100 arpents, more or less from Clarence LaFargue on February 24, 1896. In February 1904, November 1904, and February 1906, Pierre Poret purchased three parcels of land from Mr. Cappel totaling 29.5 acres. Sheriff Belt's title derives from this chain of title. In 1906, Louis Coco purchased 34.42 acres from Mr. Cappel, and in 1956, Van L. Roy, the Roys' husband and father, purchased 32.5 of those 34.42 acres from Ernest M. Coco, Louis' transferee. The Roys' title derives from this chain of title.

---

[1]The Law Enforcement District of Avoyelles Parish, Louisiana, was represented herein by Sheriff Bill Belt, Avoyelles Parish Sheriff. For convenience and ease of discussion, The Law Enforcement District of Avoyelles Parish, Louisiana, is hereinafter referred to as Sheriff Belt.

The Roys contend that the boundary between their property and Sheriff Belt's property is north of Bayou Sauvage[2], while Sheriff Belt contends that the boundary is the center of the bayou.

Pierre Poret's first acquisition from Clifton Cappel was on February 26, 1904, when he purchased four acres. He next acquired ten acres on November 23, 1904. Then, by sale dated February 20, 1906, he acquired an additional 15.5 acres from Mr. Cappel. The southern boundaries of these properties are described as: "Bounded . . . South and East by Vendor"; "South by Vendor and Mrs. Victor Moreau"; and "South by vendor," in the respective deeds.

In the transfers from Mr. Cappel to Louis Coco, Louis to Ernest Coco, and Ernest to Van L. Roy, the northern boundary is described as: "bounded on the north by W.S. Edwards, F. Moreau, and Poret"; "bounded on the north by W.H. Edwards, P. Gauthier, L.P. Gremillion, and P.L. Poret"; and "bounded on the north by Pierre L. Poret and northwest by Emeric G. Laborde," respectively.

On April 20, 1964, a Judgment of Possession was signed in the Succession of Pierre L. Poret and Eliza Bordelon Poret. That same day, the Porets' heirs partitioned their parents' property, dividing it into lots and drawing for designated lots; however, one lot, Lot 6, was not allotted and remained owned in indivision by the heirs. The southern boundary of the property is described in each document, in part, as "Bayou Moreau." In conjunction with the Judgment of Possession and the partition, a plat was prepared by surveyor, Ralph L. Gagnard, which was recorded and referenced in the property descriptions used in both of these documents. This survey, dated March 28, 1964, depicts a line along a fence/tree line in the southern portion of the survey.

_____

[2]Documents in the chain of title refer to Bayou Moreau, Bayou Savage, and bayou. Surveys of the properties depict a Bayou Sauvage and an unnamed bayou. Witnesses testified that Bayou Moreau and Bayou Sauvage are probably one and the same. For ease of discussion and consistency throughout our opinion, the term "bayou" is used.

South of this line is a wooded area through which a bayou runs. The land situated south of the bayou is labeled "Van L. Roy." The property between the fence/tree line and the bayou is not labeled.

In 1974, the Poret heirs sold Lot 6 to Charles A. Riddle, Jr. and Patrick E. Lemoine. The act of sale by four of the five Poret heirs references the 1964 Gagnard survey and describes the property as being bounded "on the south by the Estate of Van Roy (formerly Ernest Coco), on the East by Estate of Van Roy (formerly Ernest Coco) and T & P Railway." The sale by the fifth Poret heir only references the 1964 survey. Some time after the sale, Mr. Riddle and Mr. Lemoine began clearing the wooded area between the fence and the bayou. At that time, a portion of the fence along the tree line was removed. Remnants of the fence were found when the surveys were conducted for this litigation.

In August 1976, Mr. Lemoine and Mr. Riddle's wife and heirs entered into an option to purchase with the Avoyelles Parish Police Jury (Police Jury), which provided for the sale of six acres situated in Lot 6, described as "bounded on the south by Van L. Roy and/or Rudolph Haydel." The judgment of possession in Mr. Riddle's succession describes the Riddles' interest in Lot 6 by referencing Mr. Gagnard's 1964 survey and stating the property was bounded on the south by the "Estate of Van L. Roy ," yet the November 15, 1976 sale of the property describes the southern boundary as "Bayou Sauvage." In connection with this sale, Mr. Gagnard prepared a survey of these six acres, which are situated east of what is now Government Street. This survey differs from the 1964 survey as the calls and distances along the southern portion of this acreage are on the bayou, not the fence/tree line north of the bayou.

Thereafter, on May 18, 1978, and June 22, 1978, Mr. Gagnard surveyed another portion of Lot 6 also owned by the Riddles, which is situated west of Government

Street.  These surveys are similar to the March 28, 1964 survey as they depict the southern boundary of the Poret property as being north of the bayou; the bayou is not even depicted on the June 1978 survey.

In March 1989, the Riddles sold an eleven acre tract to Sheriff Belt.  The property, which is also west of Government Street, is depicted on a survey dated January 19, 1989 prepared by Jessie Lachney, a registered surveyor, who is Sheriff Belt's expert in this matter.  The survey is of the same property depicted on Mr. Gagnard's May 1978 survey and, like that 1978 survey, the southern boundary is shown north of the bayou.

On March 24, 1989, Mr. Lachney surveyed the Avoyelles Parish Jail Facilities which is east of Government Street.  Unlike Mr. Gagnard's 1964 and 1976 surveys and his own 1978 survey of the property on the west side of Government Street, this survey depicts the bayou as the southern boundary.  Mr. Lachney testified that he recognized the differences between Mr. Gagnard's 1964 and 1976 surveys of this property, but he chose to follow the later survey.

In Mr. Lachney's opinion, the bayou is the southern boundary of the Poret property.  He explained that he believes the line north of the bayou in Mr. Gagnard's 1964 survey was a traverse line.  He testified that a traverse line is a line sometimes used as a "working line" or to indicate a stream, bayou, or river.  On cross-examination, he admitted that he did not know there was no reference in the Poret chain of title to the southern boundary of the property being a bayou and that he did not attempt to confirm whether the acreage calculated by Mr. Gagnard for Lot 6 on his 1964 survey extended to the center line of the bayou.  He also admitted there is nothing on Mr. Gagnard's 1964 survey which specifically indicates that the line north of the bayou is a traverse line.  However, he identified three facts which indicated to

4

him that the bayou is the southern boundary: 1) Mr. Gagnard showed the bayou on the survey; 2) there was no land hook showing that the Roy property south of the bayou extended north of the bayou; and 3) the survey conflicts with the Judgment of Possession. He testified that, when he prepared the 1989 survey of the area east of Government Street, he noticed the difference between the 1964 survey and the 1976 survey, but he relied on the 1976 survey, believing Mr. Gagnard had a different intent when he prepared the latter survey. However, he did not explain what that difference may have been. He concluded that the line on the 1964 survey was not the property line because Mr. Gagnard's later surveys differed in that respect.

James Townsend surveyed the Roys' property and testified as their expert. He testified that he was informed by the Roys before he began his work that they believed their property extended north of the bayou. After surveying the property at issue, he advised the Roys that the jail encroached on 0.90 acres of their property. He explained that he used the 1964 Gagnard survey to begin his work and relocated the calls and distances on that survey. At trial, he identified those calls and distances on his survey. He further testified that he reviewed all of the deeds in the Roys' name and did not find any deed which defined their northern boundary as the bayou; however, he admitted he did not run the chain of title on Sheriff Belt's property. In Mr. Townsend's opinion, the 1964 Gagnard survey does not depict the southern boundary of Lot 6 extending to the center of the bayou, noting there is a difference in acreage in the 21.36 acres designated on that survey for Lot 6 and the actual acreage to the bayou, 24.76 acres.

Sheriff Belt filed a third party claim against the Police Jury, which in turn filed a third party demand against the Riddles and the Lemoines.

Following the trial of this matter, the trial judge recused himself, and the supreme court appointed another judge to decide the case. After reviewing the record, the judge determined that the boundary between these properties is the center of the bayou, finding it was the "historical boundary" between them. The Roys appeal, assigning two errors: the determination of the boundary and the trial court's failure to award them damages.

## *Standard of Review*

The parties agree that the manifest error standard of review does not apply to this appeal because the judge who decided the case was not the judge who tried it. *See Walker v. Union Mill Oil, Inc.*, 369 So.2d 1043 (La.1979).

## *Discussion*

### *The Boundary Action*

The burden of proof in a boundary action is divided. *Russell v. Producers' Oil Co.* (La.1918), 143 La. 217, 78 So. 473; *Carroll v. Holton* (La.App. 1 Cir. 1985), 472 So.2d 212. In a boundary action, the Civil Code instructs the court to "fix the boundary according to the ownership of the parties; if neither party proves ownership, the boundary shall be fixed according to limits established by possession." La.Civ.Code art. 792. "When both parties rely on titles only, the boundary shall be fixed according to titles. When the parties trace their titles to a common author preference shall be given to the more ancient title." La.Civ.Code art. 793. Lastly, La.Code Civ.P. art. 3693 instructs, "After considering the evidence, including the testimony and exhibits of a surveyor or other expert appointed by the court or by a party, the court shall render judgment fixing the boundary between the contiguous lands in accordance with the ownership or possession of the parties."

6

Evidence of possession by the Roys, the Lemoines and Riddles, and the Porets was presented at trial. However, the evidence presented showed only sporadic activities on the disputed property by these parties or their representatives, which were insufficient to satisfy the possession requirements in a boundary action. *See Martin Timber Co. v. Taylor*, 187 So.2d 196 (La.App. 3 Cir. 1966); *William T. Burton Indus., Inc. v. McDonald*, 346 So.2d 1333 (La.App. 3 Cir. 1977). As political subdivisions of the state, neither Sheriff Belt nor his predecessor in title, the Police Jury, can acquire property through acquisitive prescription. *King's Farm, Inc. v. Concordia Parish Police Jury*, 97-1056 (La.App. 3 Cir. 3/6/98), 709 So.2d 953, *writ denied*, 98-1450 (La. 9/18/98), 724 So.2d 748. Therefore, acquisitive prescription had to have accrued prior to the 1978 purchase of the property by the Police Jury to benefit Sheriff Belt. As discussed above, it did not.

We find the best evidence of the boundary between these properties, as reflected by the parties' titles, is Mr. Gagnard's 1964 survey which depicts the southern boundary of Sheriff Belt's property north of the bayou. *See also* Mr. Gagnard's 1976 survey and James Townsend's 1996 survey. We have been mindful throughout our review of the basic rule of property law that, where there is a conflict between a worded description and a survey, the survey prevails. *Casso v. Ascension Realty Co.*, 195 La. 1, 196 So. 1 (La.1940). *See also Lamson Petroleum Co. v. Hallwood Petroleum, Inc.*, 99-1444 (La.App. 3 Cir. 5/24/00), 770 So.2d 786, *writ denied,* 00-2568 (La. 11/27/00), 775 So.2d 448. This is particularly true with respect to the Poret Judgment of Possession and partition and the 1964 survey, which is the first survey of all of Pierre Poret's property.

Reviewing the evidence, especially the conflicting surveys and the conflicting expert testimony, we found the following evidence persuasive. No property

7

description in either chain of title prior to the Poret Judgment of Possession and partition designates the bayou as a boundary. The 1976 conveyance by the Poret heirs and the 1978 option to purchase in favor of the Police Jury describe the southern boundaries of those properties as property owned by Van L. Roy not a bayou. There is no indication by Mr. Gagnard on the 1964 survey that the disputed line is a traverse line and not the boundary line. The acreage of Lot 6 on Mr. Gagnard's 1964 survey is calculated as 21.36 acres; if the bayou was the southern boundary of Lot 6, the acreage would be 24.76 acres. Last, but perhaps most important, are the differences between the surveys of the property west of Government Street, where the boundary is depicted north of the bayou, and the surveys of property east of Government Street, where the bayou is depicted as the boundary. These differences are illogical and inexplicable in light of the fact that these properties were contiguous until Government Street, which is fifty feet wide, was dedicated.

***Inverse Condemnation***

Our determination of the boundary, coupled with the nature of the permanency of the encroachments on the Roys' property, requires that we address the Roys' claims of inverse condemnation. In *Williams v. City of Baton Rouge*, 98-1981, 98-2024, pp. 6-7 (La. 4/13/99), 731 So.2d 240, 246, the supreme court addressed the concept of inverse condemnation, explaining:

> "[S]ince a taking or damaging of property may in fact occur without expropriation proceedings by a public body through *oversight or lack of foresight*, there must be some proceeding whereby an owner may seek redress when his property is damaged or taken without the proper exercise of eminent domain." *Reymond* [*v. State Through Dep't of Highways*, 255 La. 425, 231 So.2d 375, 383 (La.1970)] (emphasis added). "Such an action is often referred to as 'inverse condemnation', and our Article 1, Section 2, and Article 4, Section 15, support a proceeding in the nature of inverse condemnation by such an affected property owner." *Id.*

8

In order to determine whether property rights have been "taken" under La. Const. Art. 1, Sec. 4, which provides that property shall not be "taken or damaged" by the state or its political subdivisions except for public purposes and with just compensation paid to the owner, the court must (1) determine if a right with respect to a thing or an object has been affected; (2) if it is determined that property is involved, decide whether the property has been taken or damaged in a constitutional sense; and (3) determine whether the taking or damaging is for a public purpose under Article 1, Sec. 4. *Constance v. State Through Dept. Of Transp. and Development Office of Highways*, 626 So.2d 1151, 1157 (La.1993); *State Through Dept. Of Transp. and Development v. Chambers Investment Co., Inc.*, 595 So.2d 598 (La.1992).

The Roys' property has been "taken" as the Avoyelles Parish Jail is built on 0.90 acres of it, and they are entitled to inverse condemnation damages. The compensation for landowners in inverse condemnation proceedings is the same as in expropriation cases: the owner is entitled to market value of his property and severance damages. *Gray v. State Through Dep't of Highways*, 250 La. 1045, 202 So.2d 24 (La. 1967). The value of appropriated property is fixed as of the date of its appropriation. *Bd. of Levee Comm'rs of Orleans Levee Dist. v. Aurianne,* 229 La. 83, 85 So.2d 39 (La. 1955); *Jacobs v. Kansas City, S. & G. Ry. Co.*, 134 La. 389, 64 So. 150 (La. 1913). Interest accrues on that value from the time of the taking.*A. K. Roy, Inc. v. Bd. of Comm'rs for Pontchartrain Levee Dist.,* 238 La. 926, 117 So.2d 60 (La. 1960).

Earl Waltman, a real estate appraiser, appraised the Roys' property. He testified at trial regarding his appraisals which he conducted in December 2001 and April 2002. The buildings which encroach on the Roys' property were built in 1978, 1986, and 1992; hence, there were three appropriations. Accordingly, this matter must be remanded for a determination of the value of each piece of property at the time it was appropriated and whether the Roys are entitled to severance damages.

Landowners are also entitled to recover damages under La.Civ.Code art. 2315 for mental anguish, loss of use, loss of enjoyment, irritation, anxiety, discomfort, and

9

embarrassment when their property is appropriated. *Williams*, 731 So.2d 240. The Roys were not aware of the appropriation of their property until 1996. Constance Roy was the only plaintiff who appeared and testified at trial. She testified that she moved from the property in 1986. On the issue of damages, she testified that she did not like it that someone had taken something which belonged to her. We find this insufficient to justify an award of damages under La.Civ.Code art. 2315. The other plaintiffs did not appear and testify at trial; therefore, they did not bear their burden of proof on this issue. *Keaty v. Moss Motors, Inc.*, 93-1452, 93-1453 (La.App. 3 Cir. 6/1/94), 638 So.2d 684, *writ denied*, 94-2211 (La. 11/11/94), 644 So.2d 399.

### *Costs*

The general rule is that fixing a boundary is beneficial to both parties and the costs should be shared equally. *Deshotel v. Lachney*, 465 So.2d 974 (La.App. 3 Cir. 1985). Accordingly, we assess the costs for the boundary action equally between the Roys and Sheriff Belt. All costs associated with the inverse condemnation proceeding are assessed to Sheriff Belt.

### *Disposition*

The judgment of the trial court is reversed. The boundary between the Roys' property and Sheriff Belt's property is found to be that depicted on surveys prepared by Ralph Gagnard dated March 28, 1964 and James Townsend dated September 16, 1996. This matter is remanded for further proceedings to determine the Roys' damages for their property which was appropriated. All costs of the boundary action are assessed equally between the parties. All costs of the inverse condemnation proceeding are assessed to Sheriff Belt.

**REVERSED AND REMANDED.**

10