187 So.2d 196 (1966)
MARTIN TIMBER COMPANY, Inc., Plaintiff and Appellant,
v.
Watson TAYLOR, Defendant and Appellee.
No. 1716.
Court of Appeal of Louisiana, Third Circuit.
June 2, 1966.
Gahagan & Gahagan, by Russell E. Gahagan, Natchitoches, for plaintiff-appellant.
Thomas & Friedman, by Sam J. Friedman, Natchitoches, for defendant-appellee.
Before TATE, HOOD and CULPEPPER, JJ.
CULPEPPER, Judge.
This is a petitory action by Martin Timber Company, Inc. alleging record ownership of 2.02 acres of land. The defendant possessor of the property, Watson Taylor, claims ownership by acquisitive prescription of 30 years. From an adverse judgment, plaintiff appeals.
The principal issue is factual, i. e., whether defendant has maintained a fence around the 2.02 acres for over 30 years.
*197 The property is located in the pine hills of Natchitoches Parish. In 1912 defendant's father, Lafe Taylor, purchased from Ed Clark a tract of land, including 20 acres with which we are concerned described as the East Half of the Northeast Quarter of the Northeast Quarter of Section 28, Township 11 North, Range 6 West. Defendant, then a young man, moved into the Ed Clark house on this 20 acres and started farming the 5 or 6 acres which was then cleared. He didn't pay his father any rent, but he did pay the taxes and his father allowed him to remain on the property.
Watson Taylor testified that in about 1913 or 1914 he married; and about 1915 he cleared additional land to raise cotton, corn and potatoes to support his family. He enclosed this new field with a rail fence. The fence extended north of the north boundary line of the 20 acres acquired by Lafe Taylor from Ed. Clark and included the 2.02 acres in Section 21 at issue here. By about 1917 the rails had rotted and defendant put in the first barbed wire fence along the same line as the rail fence.
In 1932 Lafe Taylor sold to his son, Watson Taylor, the 20 acres above described. This was the same property on which Watson Taylor had lived and farmed since 1913. Defendant says he continued to cultivate the property up to the fence on the north which he had constructed in 1915, and which includes the 2.02 acres, until he stopped farming there in 1939. Thereafter he used the property for a pasture and allowed trees to grow. He testified he has maintained the fence in question, replacing the barbed wire whenever it was broken down, up until the present date and has claimed the property as his own since the purchase from his father in 1932. This suit was filed in 1965.
The principal witness corroborating Watson Taylor is Mr. Elbert Gunter, who lives three-fourths of a mile from the property in question. Mr. Gunter, an elderly gentleman, testified he remembers when Lafe Taylor bought this property from Ed Clark in 1912; soon thereafter Lafe's son, Watson Taylor moved on the property; the rail fence was built by Watson Taylor in about 1915 around the new field. Gunter testified he is intimately acquainted with the property; has been on it several times a year since 1915; and knows that Watson Taylor has maintained the fence in the same location up to the present time. Mr. Gunter says Watson Taylor cultivated up to the fence until about 1939 and then put the land in pasture. Gunter testified that evidence of the old windrows can still be seen on the 2.02 acres in question.
It was stipulated that Caison Taylor, brother of the defendant, Watson Taylor, would, if called to the stand, testify to the same effect as his brother.
Mr. L. B. Levell, who is in the business of purchasing minerals and mineral leases, also corroborated Watson Taylor. Mr. Levell first went on the property in January of 1965, apparently to investigate Watson Taylor's claim to the 2.02 acres, mineral interests under which Level later bought from Taylor. Mr. Levell testified he examined the fence and the 2.02 acres in question closely. He took pictures to show that it was an old fence, with the wire grown into the trees as much as 5 or 6 inches in places. He testified evidence of the old windrows could still be seen.
As opposed to the above testimony, plaintiff's first witness was Mr. F. A. McCarthy, land superintendent for Martin Timber Company for over 25 years. He testified the 2.02 acres in question is part of approximately 3,500 acres purchased by Martin from W. Scott Wilkinson in 1953. He says he personally cruised this property in 1952, preparatory to the purchase; he found evidence of an old rail fence approximately 250 feet north of the section line between Sections 21 and 28, which old rail fence would be about 150 feet north of the fence around the 2.02 acres in question here; the remains of the old rail fence were visible, but the fence was completely "down"; there *198 was no barbed wire fence or any other fence around the 2.2 acres in 1952.
Mr. McCarthy testified further that Martin painted trees along the section line between Sections 21 and 28 in 1953. Thereafter he was informed by one of his foresters (Atlas Pierce) in 1957 that a fresh barbed wire fence had just been put up around the 2.02 acres in question. An attempt was made to have Watson Taylor sign a lease, admitting Martin's ownership, but Taylor refused.
The remainder of Mr. McCarthy's testimony was to the effect that he revisited the property several days before the trial in 1965. He found the wire fence in question. He says he examined the ground more closely and found evidence of another old rail fence about 60 feet south of the section line. He said there was a difference in the growth of timber north and south of this old rail fence; but he admitted that there was some evidence of old cultivation on the west side of the 2.02 acres in question here.
Mr. George D. Rowell, formerly a district forester for Martin, testified he repainted the section line in 1963 and found the wire fence in question. He took chips from the tree in which the wire was embedded deepest and expressed the opinion, as an expert forester, that the wire had been nailed to that tree from 6 to 11 years. He visited the property with Mr. McCarthy several days before the trial and his testimony as to that visit was stipulated to be the same as that of Mr. McCarthy.
Mr. Atlas Pierce, also a former employee of Martin, testified he surveyed the Martin property in 1957 and found the encroaching wire fence in question, which he said was a new fence, made of old wire but with new staples and several new posts. Pierce also visited the property with McCarthy just before the trial and his testimony regarding that visit was stipulated to be the same as McCarthy's.
Mr. Robert R. Waggoner also visited the property with McCarthy a few days before the trial and it was stipulated that his testimony as to that visit would be the same as McCarthy's.
From the above it can be seen that the testimony is in considerable conflict as to how long the barbed wire fence in question has been maintained in its present location. The district judge was much impressed with the testimony of Mr. Elbert Gunter. In his written opinion he states:
"The Court finds that the fence was put there, according to the testimony of Mr. Gunter, whose worthiness as a witness is beyond reproach, as far as I am concerned I have known him for many, many years, and I have known him to be an honest man on every occasion. I feel that if he did not know what he was talking about, he would not have been here today. And when I say that, I do not mean that the other witnesses who appeared here for the plaintiff testified falsely."
Thus, the trial judge found, from the testimony of Watson Taylor, Elbert Gunter, Caison Taylor and L. B. Levell, that defendant's version of the construction and maintenance of this fence is proved. It is, of course, too well settled to require the citation of authority that the trial judge, who sees and hears the witnesses, is in a better position than the appellate court, which sees only the record, to assess the proper weight and credibility to conflicting oral testimony. The trial judge's findings in this regard will not be disturbed in the absence of manifest error. There is no such error in the present case. There was ample testimony to support the trial judge's findings.
The applicable law is clear. The trial judge correctly found plaintiff has established his title to the 2.02 acres in question under both LSA-C.C. Articles 3499, 3500 and Article 852.
*199 We will first discuss LSA-C.C. Articles 3499, 3500 which read as follows:
"Art. 3499. The ownership of immovables is prescribed for by thirty years without any need of title or possession in good faith."
"Art. 3500. The possession on which this prescription is founded must be continuous and uninterrupted during all the time; it must be public and unequivocal, and under the title of owner."
Our jurisprudence under these articles is established that where a person maintains an enclosure, such as a fence, around the property and exercises open, physical possession as owner for a continuous and uninterrupted period of 30 years, the requirements of the law are satisfied. Albert Hanson Lumber Company v. Riggs Cypress Company, 130 La. 772, 58 So. 567; ABA Exploration Gas & Oil Company v. A. Wilbert's & Sons Lumber & Shingle Company, La.App., 170 So.2d 752; Hill v. Richey, 221 La. 402, 52 So.2d 434. Under the facts found in the present case, Watson Taylor's possession within this fence was open, public, physical, continuous, uninterrupted, and as owner from 1932, when he purchased the property from his father, to the time this suit was filed in 1965, a period of over 30 years.
As the trial judge correctly held, Watson Taylor has also acquired this property under the provisions of LSA-C.C. Article 852 which provides for acquisitive prescription of 30 years by physical possession to a visible boundary beyond the limit of the recorded title.
The trial judge held that by the time Martin Timber Company purchased this property in 1953, Watson Taylor had already acquired the 2.02 acres by prescription. Because, under Article 852 the possession of Lafe Taylor, from 1915 to 1932, could be tacked to that of Watson Taylor, from 1932 to 1953, to make the necessary 30 years. See Stanford v. Robertson, 144 So.2d 747 (3rd Cir. 1962) for a full discussion.
In this court, plaintiff argues that under Stutson v. McGee, 241 La. 646, 130 So.2d 403, these possessions cannot be tacked. But, the Stutson case is distinguishable. There, no common boundary was between the property in dispute and the limits of the recorded title. Hence there was no boundary at issue and the case was decided under LSA-C.C. Article 3499 under which tacking is not permitted without privity. Unlike the Stutson case, we have in the present matter possession to a visible boundary beyond the boundary described in the title. Article 852 is applicable here.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff appellant.
Affirmed.