DOMENGEAUX, Chief Judge.
Emelyn Sutton brought this suit to fix the boundary between a tract of land she owns and a tract owned by defendant, Cleo Rougeau. After a trial on the merits, the district judge rendered judgment fixing the boundary according to the parties’ titles. From this judgment both parties have appealed.
The relative positions of the pertinent tracts of land are shown on Appendix 1.
The Sutton tract is described as:
“Beganing (sic) 402 feet west of southwest comer of a 1 acre tract of land out of the southwest quarter of northeast quarter of section 15, township 10 range 12 west. Now owned by J.C. Singleton, thence north 300 feet, thence west 220 feet, thence south 252 feet thence east 220 feet to point of beganing (sic).”
The Rougeau tract is described as:
“Commencing on the North side of Center Street, 200 feet West of the Southwest corner of that certain one-acre tract of land out of the Southwest Quarter of the Northeast Quarter (SW ¼ of NE ¼), of Section 15, Township 10 South, Range 12 West, owned by Joe Bond, as acquired by him under instrument dated December 6, 1957, filed in the office of the Clerk of Court for Calcasieu Parish, Louisiana, bearing file # 708172 and recorded in Book 655, page 828, of conveyances, said point of commencement also being described as being 30 feet North and 410 feet West of the Southeast corner of the Southwest Quarter of the Northeast Quarter (SW Vi of NE ¾⅛), Section 15, Township 10 South, Range 12 West; thence North 380 feet; thence South 68 Degrees, no Minutes, West 215.7 feet; thence South 300 feet to the North side of Center Street; thence East along the North side of Center Street 200 feet to the point of commencement.”
The dispute here concerns the location of the Sutton tract’s eastern boundary and the Rougeau tract’s western boundary.
Mr. Rougeau contended at trial that he has acquired all of the land east of the ditch, shown on Appendix 1, through possession beyond his title within enclosures for thirty years. For this reason, he argues that the boundaries should be located at the ditch.
Mrs. Sutton, on the other hand, contends that Mr. Rougeau and his ancestors in title did not have thirty years of possession of the land and that, therefore, the boundary should be located according to ownership as reflected by their titles.
The trial court rendered judgment in favor of Mrs. Sutton and fixed the boundary line at “30 feet, more or less, east of the center of the ditch, extending north 300 feet.” This line is depicted on Appendix 1 as the line labeled North 300’.
We first address Mr. Rougeau’s contention that the trial judge committed manifest error in refusing to allow into evidence surveys of the property offered on defendant’s behalf.
The first survey offered purported to be a survey of the property made by Mr. R.E. Oxford, dated November 23, 1952. Mr. Rougeau also offered a second plat prepared by Mr. Oxford, dated December 20, 1952. At trial, Mr. Rougeau’s attorney asked Mr. Phillip L. Whitaker certain questions on cross-examination concerning the first survey. The trial court sustained opposing counsel’s objection to the admission *474 of evidence based on the survey, ruling that the document was hearsay and had not been authenticated. At the noon recess the defendant’s counsel had the document recorded in the public records and tried to re-introduce the survey, this time stating that as a part of the public record, the document was admissible into evidence. The district court again refused to allow the document to be admitted into evidence.
On appeal defendant’s counsel argues that the document is admissible because it was not offered to prove the truth of its contents. Counsel contends that the survey was offered to show what Mr. Roug-eau relied on when purchasing the property and to show the reason he moved the fence on his eastern boundary. He contends that for this reason, the document need not have been authenticated by the surveyor who made it, but can be admitted based on Mr. Rougeau’s testimony that this survey was attached to his deed when he purchased the property and that it was the survey he used in having the fence on its eastern boundary moved further to the east. We do not agree with these assertions.
Because the dispute in this case concerns the location of the Sutton’s eastern boundary and Mr. Rougeau’s western boundary, Mr. Rougeau’s reason for moving the fence on his eastern boundary is not relevant. This is so because it is not a fact of consequence to the determination of the dispute here and it would not tend to make the existence of any fact of consequence to this dispute either more or less probable. Therefore, the survey was not admissible for this purpose.
To the extent that Mr. Rougeau’s reliance on the survey in purchasing the property is relevant, it is so only because the survey purports to establish the boundaries of the property he was purchasing. The survey, therefore, was being offered as evidence of the location of Mr. Roug-eau’s western boundary. It was encum-bent upon Mr. Rougeau, as proponent of the document, to prove its genuineness. No evidence was offered to show the authenticity of the survey. Nor does the document enjoy a presumption of authenticity as an ancient document under La.R.S. 13:3728, et seq., since it had not been recorded in the public records for thirty years as required. Therefore, the trial court properly refused to allow the R.E. Oxford survey into evidence.
For the same reasons, the district court did not err in refusing to allow into evidence the survey made by Mr. E.L. Gor-ham, dated June 6,1950, and the December 20, 1952 plat prepared by Mr. Oxford.
We now consider whether the trial judge erred in locating the boundary as he did.
The following Civil Code articles are relevant to the issue presented here:
The court shall fix the boundary according to the ownership of the parties; if neither party proves the ownership, the boundaries shall be fixed according to limits established by possession. Article 792;
When both parties rely on titles only, the boundaries shall be fixed according to titles. When the parties trace their titles to a common author preference shall be given to the more ancient title. Article 793;
When a party proves acquisitive prescription, the boundaries shall be fixed according to limits established by prescription rather than titles. If a party and his ancestors in title possessed for 30 years without interruption, within visible bounds, more land than their title called for, the boundaries shall be fixed along these bounds. Article 794.
Relying on Civil Code Article 793, the district judge fixed the boundary according to the descriptions contained in the titles. In doing so, the court found that Mr. Roug-eau failed to prove that the boundaries should be established according to possession beyond titles within visible bounds under Article 794.
In Leblanc v. Laborde, 368 So.2d 1126 (La.App. 3rd Cir.1979), this Court made the following statements concerning Article 794:
“This article became effective January 1, 1978 and applies to this action since *475 suit was not filed herein until January 6, 1978. The new Article 794 replaces Article 852 of the Louisiana Civil Code of 1870, but does not change the law as stated within Article 852, nor does it affect the line of jurisprudence which developed in interpreting Article 852.
Under Article 852, and now under Article 794, where there is a visible boundary and where there has been actual uninterrupted possession, either in person or through ancestors in title, for thirty years or more of the land extending beyond that described in the title and embraced within the visible bounds, then the party who possesses acquires the right to the land beyond their title. William T. Burton Industries, Inc. v. Wellman, 343 So.2d 996 (La.1977); Brookshire v. Guidry, 355 So.2d 559 (La.App. 3rd Cir.1978).
The requirements of these articles indicate that one must maintain an enclosure, such as the fence, around the property and exercise open, physical possession as owner for a continuous and uninterrupted period of thirty years. Martin Timber Company v. Taylor, 187 So.2d 196 (La.App. 3rd Cir.1966). There must have been not only evidence of a corporeal possession of the property for the required period of time, but also a positive intent to possess as the owner shown by the possessor during that time. William T. Burton Industries, Inc. v. McDonald, 346 So.2d 1333 (La.App. 3rd Cir.1977). Finally, the tacking of possession of all predecessors in title is permitted for acquisitive prescription beyond title to a visible boundary. Dubois v. Richard, 223 So.2d 198 (La.App. 3rd Cir.1969).”
The evidence of possession of the property east of the ditch and beyond title by Mr. Rougeau and his ancestors in title included testimony that a Mr. Sonnier maintained a garden and parked a bus there. However, it was shown that Mr. Sonnier, who is Mr. Rougeau’s ancestor in title, had a garage which was on the disputed property moved toward the east so that it would no longer be on the property described in the Sutton title. This act, which occurred just prior to Mr. Sonnier’s sale of his property to a Mr. Leblanc in July of 1951, indicates that Mr. Sonnier did not possess the property beyond his title as owner.
Evidence also showed that Mr. Leblanc kept a milk cow and maintained a garden behind the garage. However, since the garage had been moved off of the disputed property prior to Mr. Leblanc’s purchase of the Rougeau tract, it is not clear that Mr. Leblanc ever actually possessed any of the property beyond his title.
Finally, Mr. Rougeau testified that he cut the grass, took care of the yard, and kept the brush from growing away from the ditch. He did not say how often and over what period of time these acts occurred.
Given this evidence, we cannot conclude that the trial judge was manifestly erroneous in finding that Mr. Rougeau failed to prove the possession beyond his title necessary to have the boundary established at the ditch under article 794. The evidence does not establish uninterrupted possession beyond title for thirty years or more nor does it establish any intent to possess the disputed property as owner.
Since Mr. Rougeau has not established his right to have the boundary fixed according to possession under Article 794, the boundary must be fixed according to the ownership of the parties as reflected by their titles. Articles 792, 793.
A comparison of the property description contained in the Sutton title with that in the Rougeau title shows that there is no conflict between the two descriptions. That is, there is no property described in the Sutton title which is also described in the Rougeau title. Therefore, the Sutton eastern boundary can be fixed according to the Sutton title without reference to-which title is more ancient.
The district court judgment fixed the boundary at "30 feet, more or less, east of the center of the ditch, extending north 300 feet.” In reaching this conclusion the district court reviewed the property description contained in the titles, he took into account the testimony of Phillip L. Whit *476 aker, who testified as an expert surveyor on behalf of Mrs. Sutton, and he examined the survey and two exhibits made under Mr. Whitaker’s supervision. The defendant argues here that the trial court erred in taking the survey and exhibits into account, stating that these documents were “outdated, incorrect, unreliable, and incomplete.” We disagree.
At trial, Mr. Whitaker testified as an expert surveyor on behalf of Mrs. Sutton. He indicated that he made the survey in question in 1973 to determine the eastern boundary of the Sutton property, at the request of Mrs. Sutton’s husband. He stated that he used property descriptions as well as field observations in preparing the survey. He further testified that the two exhibits introduced into evidence were made under his supervision, and were based on the 1973 survey.
We conclude that the district court did not err in admitting the survey and exhibits into evidence or in taking them into account in reaching his decision. The evidence was properly authenticated and Mr. Whitaker was available to answer any questions which the defendant may have had concerning the documents.
Mrs. Sutton argues on appeal that the district court erred in fixing the boundary, stating that he incorrectly located the Singleton tract. Since the location of the Sutton and Rougeau tracts are dependent on the location of the Singleton tract, the district court was required to determine its location.
The Singleton tract is described as follows:
“A certain tract of land situated in the Town of Vinton, Louisiana, embraced within the following bounds; Commencing at a point thirty (30) feet Morth (sic) of the Southeast Corner of Southwest quarter of Northeast Quarter (SE ¼ of NE ¼) of Section Fifteen (15), Ten (10), Twelve (12), running thence North Two Hundred Ten (210) feet, thence West Two hundred ten (210) feet, thence South two Hundred ten (210) feet, thence East two Hundred ten (210) feet to point of commencement.”
Plaintiff argues that the trial court erred in not locating the Singleton tract according to the way in which it was actually possessed. We do not agree. The significance of the Singleton tract in this dispute is that the Sutton and Rougeau titles use it as a reference point, although the Singleton tract is designated as the Bond tract in Mr. Rougeau’s title. However, these titles refer to the Singleton tracts’ property description, not to the tract as actually possessed. Therefore, actual possession is not relevant to the issues presented here.
After reviewing the property descriptions, exhibits, and testimony, we conclude that the trial judge did not err in locating the Singleton tract based on its property description. The trial judge found that the eastern boundary of the Singleton tract is located correctly in the Whitaker survey and as depicted in the exhibit attached to the judgment. The record fully supports this conclusion, and we accordingly find no merit in the plaintiff's assignment of error.
The eastern boundary of the Sutton property is described as beginning 402 feet west of the southwest corner of the Singleton tract, and running north 300 feet. In the judgment, the district court fixed the boundary at 30 feet east of the ditch, extending north 300 feet. An examination of the evidence shows that these two descriptions fix the boundary at the same location. Therefore, the trial judge did not err in locating the boundary where he did. We note, however, that since the boundary is to be fixed according to title, the description placing the boundary at 402 feet west of the southwest corner of the Singleton tract is more appropriate.
Mr. Rougeau also assigns as error the trial court’s assessment of one hundred percent of the cost at trial against him.
Civil Code Article 790, which became effective in 1978, provides that when a boundary is fixed judicially, court costs are taxed in accordance with the rules of the Code of Civil Procedure. Comments to Article 790 indicate that the provision was not intended to change prior law. Under the *477 jurisprudence prior to 1978 the general rule was that the fixing of a boundary is of benefit to both parties to the action so that the cost should be shared by the parties. Phillips v. Parker, 469 So.2d 1102 (La.App. 2nd Cir.1985). La.C.C.P. art. 1920 states that “the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.”
In this case the trial judge did not state his reasons for assessing all costs to the defendant. We note, however, that this is not a case where each party’s title described the same property. Mr. Roug-eau knew that his western boundary, as described in his title, did not extend to the ditch and that the property in dispute was described in the Sutton title. He was also aware that Mr. Sutton intended to exercise his right to all the property described in his title, as was evidenced by the survey he had made of his eastern boundary in 1973. In 1973, Mr. Rougeau could not have had thirty years of adverse possession beyond his title. Given these facts, the trial judge could have concluded that one hundred percent assessment of costs against the defendant was equitable. Under the circumstances, we cannot conclude that the trial judge erred in assessing these costs against the defendant.
The defendant also assigns as error the trial judge’s remarks and disposition towards the defendant and his attorney during the course of the trial. After reviewing the record, we find that there is no merit to this assignment of error.
For the above and foregoing reasons the judgment of the district court is affirmed. All costs on appeal are assessed against the defendant.
AFFIRMED.
*478 [[Image here]]